William T. SWARTZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–00–469–CR.

Court of Appeals of Texas, Corpus Christi.

Nov. 29, 2001.

Greg Frazer, Austin, for Appellant.

Patrick L. Flanigan, Dist. Atty., Sinton, for State.

Before Justices DORSEY, HINOJOSA, and CASTILLO.

## OPINION

CASTILLO, Justice.

Appellant, William T. Swartz, was convicted by a jury of the offense of credit card abuse, a state jail felony. He was sentenced by the court to two years in a state jail, suspended for a term of three years community supervision, and assessed a $1000.00 fine. From this conviction Swartz appeals, alleging in a single issue

that the evidence is legally insufficient to support his conviction. We affirm.

### Factual Background

Appellant was a cashier at a "Speedy Stop" convenience store/gas station and was working, along with another cashier, Priscilla Bardwell, on November 9, 1999. On that day, the victim, Terri Whitman, had her daughter fill up her car with gas, and paid for the gas at the gas pump with a credit card. After leaving the Speedy Stop, Whitman became aware that she did not have her credit card and returned to the store. When Whitman and her daughter were unable to locate the card around the pump area, the daughter reported the loss of the card to Bardwell. At the time Whitman's daughter was pumping gas, appellant had been outside of the store, taking a cigarette break with some friends with whom Bardwell was acquainted. Bardwell identified the group as consisting of two young men—one whose name was Steven Sammons and one whom she only knew as Brock—and two young women—one she had worked with named Shannon Arswaga and another whose name she did not know.

By the time Whitman's daughter had returned to report the lost card, appellant was inside the store and standing next to Bardwell. Appellant soon afterwards went back outside with his friends and, shortly thereafter, Bardwell noticed that the friends were pumping gas into the vehicle in which they had arrived, using a credit card. Bardwell thought this unusual as she had, on other occasions, noted that these particular friends of appellant always paid with cash. She could not see who was pumping the gas or who had "swiped" the card. She suspected that they had found, and were using, Whitman's card and began to place a call to Whitman, when appellant and his friends walked back into the store.

Bardwell then hung up the phone but continued to watch the small group.

Appellant retrieved three cartons of cigarettes from the back room and rang them up on register number two, the one to which he was assigned that night. The girls got two more items and brought them to the counter and one requested a carton of cigarettes but appellant denied her request, informing her that the carton would overdraw the card. Appellant swiped the card into the register. Bardwell testified that once the receipt came up, the receipt was signed by Steve Sammons. A total of $83.34 was charged to the card. The friends then left the store. Appellant remained at work and shortly thereafter took Bardwell outside the store and asked Bardwell if she "was going to tell." Bardwell responded, "Tell about what?" and appellant answered, "about the credit card." When she answered, "You know that is fraud," appellant replied, "Oh, well, it's going to be out the window down the road anyway." Bardwell assured appellant that she would not tell, but the next time she came in to work, she informed their boss.

Later in her testimony at trial, Bardwell stated that Shannon had not signed the receipt as Shannon stood behind "the boys." When asked again who had signed the receipt, Bardwell said that she did not actually watch "them sign out it" so she did not know. The manager of the store also testified at trial, specifying that the card was rung up at appellant's register and that the surveillance tapes, which were normally kept for thirty days, had obviously been tampered with and taped over for the relevant time period. She testified that appellant knew how to access the tapes but admitted that both he and Bardwell would have had access.

### The Indictment and the Jury Charge

The State indicted appellant and Sammons in the same indictment, alleging that they, acting alone or together, committed the offense of credit card abuse, knowing that the card had not been issued to either appellant or Sammons. After the normal recitations regarding the actions of the grand jury, the corpus of the indictment read:

> WILLIAM T. SWARTZ AND STEVEN C. SAMMONS, acting alone or together, on or about the 9th day of November A.D.1999, and anterior to the presentment of this Indictment, in the County and State aforesaid, did then and there intentionally and knowingly, with the intent to fraudulently obtain a benefit, to-wit, gasoline and cigarettes, from Felicia Ratajski, present or use an Exxon credit card issued by Monogram Credit Bank of Georgia and bearing account number 444 401 014 6, with knowledge that the card had not been issued to the said WILLIAM T. SWARTZ or STEVEN C. SAMMONS, and that said card was not used with the effective consent of Terri Whitman, the card holder; against the peace and dignity of the State.

The application paragraph of the jury charge at the trial of appellant, however, only charged appellant as a party to the offense, charging Sammons as the principal. The application paragraph read:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 9th of November, 1999, in Aransas County, Texas, STEVEN C. SAMMONS, did then and there, intentionally or knowingly, with intent to fraudulently obtain a benefit, to-wit, gasoline or cigarettes, from Felicia Ratajski, present or use an Exxon credit card issued by Monogram Credit Bank of Georgia and bearing account number 444 401 014 6, with knowledge that the card had not been issued to the said STEVEN C. SAMMONS, and that said card was not used with the effective consent of Terri Whitman, the card holder—and that the defendant WILLIAM T. SWARTZ did then and there, acting with intent to promote or assist the commission of the offense, if any, aided STEVEN C. SAMMONS to commit the offense, if any, by his own actions and conduct during the commission of said offense, namely, by accepting and processing the credit card, knowing that the card had not been issued to the said STEVEN C. SAMMONS, and that said card was not used with the effective consent of Terri Williams, the cardholder, then you will find the defendant, WILLIAM T. SWARTZ, guilty as charged in the indictment.

### Legal Sufficiency of the Evidence

In his sole issue presented, appellant argues that the evidence at trial was legally insufficient to support his conviction. He asserts that the evidence failed to prove the identity of Steven C. Sammons as the principal actor and therefore contends that the jury could not have found appellant guilty of aiding Sammons as charged in the application paragraph of the jury charge. Appellant specifically argues that the testimony of Bardwell, in which she first claimed that Sammons signed the receipt, and later claimed she did not see who signed the receipt, amounted to an uncertain in-court identification upon which the guilty verdict could not be supported.

#### Standard of Review

In conducting a legal sufficiency review, we consider all the evidence in the light most favorable to the prosecution and determine whether any rational trier of

fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In this review, we are not to reevaluate the weight and credibility of the evidence, but rather, act only to ensure that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App. 1993). We are also not to measure the sufficiency of the evidence by the jury charge actually given, but rather by the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 239–40 (Tex.Crim.App.1997). A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* at 240. This standard was formulated to ensure that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted. *Id.*

Appellant suggests that it would violate his constitutional rights for this Court to consider the sufficiency of the evidence "under a theory not submitted to the jury." Appellant argues that this Court cannot consider the hypothetically correct jury charge but must instead measure the sufficiency of the evidence "against the jury charge that the trial court actually submitted" which he argues was a correct jury charge. Appellant ignores the plain language of *Malik* which mandates the use of the hypothetically correct jury charge standard. *Malik*, 953 S.W.2d at 240. In seeking to have this Court measure sufficiency by the jury charge actually given, appellant would not only have us reject this clear expression of authority, but

would also have us reinstate the precise problem which *Malik* sought to correct— "that persons who are guilty of the crime charged and convicted by a jury may nevertheless be acquitted on appeal because the State failed to object to an erroneous and/or unnecessary instruction favorable to the defendant." *Id.* at 239. As noted above, the purpose for rejecting the standard which appellant proposes to us today was to prevent the "greatest form of relief in the criminal justice system"—an acquittal—to be granted for a mere error in the jury charge submitted, rather than an actual failure in the State's proof of the crime. *Id.* at 239, 240.

■ Appellant also seems to believe that as the jury charge alleged at least one theory (that of parties) correctly, it was therefore technically correct and so not subject to the *Malik* analysis. However, the court of criminal appeals has held that *Malik* applies even in the absence of alleged jury charge error. *Gollihar v. State*, 46 S.W.3d 243, 255 (Tex.Crim.App.2001). Of course, the hypothetically correct charge may not modify the indictment allegations in such a way as to allege an offense different from that alleged in the indictment. *Id.* at 256 n. 20 (citing *Planter v. State*, 9 S.W.3d 156, 159 (Tex.Crim.App. 2000)). However, in the present case, the indictment alleged appellant committed the offense as either a principal or party and so the hypothetically correct charge for this case would have contained both theories. *See, e.g., Howard v. State*, 966 S.W.2d 821, 825 (Tex.App.—Austin 1998, pet. ref'd)(upholding the sufficiency of the evidence to establish defendant's guilt as a party even though law of parties was not included in application paragraph because it was raised by the evidence and so would have been included in a hypothetically correct jury charge.)

Finally, appellant argues that *Malik* does not permit an analysis of the hypothetically correct charge for the case if the hypothetically correct charge contains language not presented to the jury in the actual jury charge. In other words, appellant argues that *Malik* can only apply when all the elements of the hypothetically correct charge were actually submitted to the jury. Appellant cites, but misreads, footnote three of *Malik*. While indeed a conviction cannot be affirmed on legal and factual grounds not submitted to a jury, when an indictment has been presented that authorizes conviction on a particular ground and facts have been presented to a jury that are sufficient to convict on that ground, it is not necessary that the jury charge itself have specifically stated that ground in order for a conviction to be affirmed. *Malik*, 953 S.W.2d at 240 ("This standard can be uniformly applied to all trials...whether or not the indictment is facially complete, and regardless of the specific wording of the jury charge actually given."). The *Malik* court itself anticipated the review of theories that were raised by the evidence, but not charged in the jury charge, or even the indictment, where such theories are permitted by law and authorized by the indictment. *See Malik*, 953 S.W.2d at 239 ("...we recognize that measuring sufficiency by the indictment is an inadequate substitute because some important issues relating to sufficiency—e.g. the law of parties and the law of transferred intent—are not contained in the indictment."); *see also Planter*, 9 S.W.3d at 158 (speaking of the "deficiencies" of the jury charge in not charging the law of parties in two cases decided under *Malik*); *Blanco v. State*, 962 S.W.2d 46, 47 (Tex.Crim.App.1998)(re-

manding case back to appellate court for review under *Malik* where the hypothetically correct charge would have included the law of parties even though the application paragraph did not).

Accordingly, we reject appellant's request that we analyze this case under the actual charge given to the jury and proceed to analyze the sufficiency of the evidence under the *Malik* standard of the hypothetically correct jury charge.

### Analysis

There was unquestionably error in the jury charge submitted in this case. Although the indictment charged appellant both as a principal actor and as a party to the offense,[1] the application paragraph in the jury charge only contained language charging appellant as a party. The hypothetically correct charge in this case would have allowed the jury to consider appellant's culpability as a principal as well and so we must review the sufficiency of the evidence to support appellant's conviction as either a principal or a party.

■ The elements of credit card abuse are:

(1) a person;

(2) with intent to obtain a benefit fraudulently;

(3) presents or uses;

(4) a credit card or debit card;

(5) with knowledge that the card, whether or not expired, has not been issued to him; and

(6) with knowledge that the card is not used with the effective consent of the cardholder.

---

1. Although perhaps not the clearest of language, the use of the phrase, "acting alone or together" in an application paragraph, when preceded by an instruction on the law of parties, has been held to authorize conviction as either a principal or a party. *Marvis v.. State*, 36 S.W.3d 878, 880 (Tex.Crim.App. 2001).

TEX. PEN. CODE ANN. § 32.31(b)(1)(Vernon 1994).

■ A hypothetically correct charge must also necessarily be authorized by the indictment, that is, it must contain the statutory elements of the offense as modified by the charging indictment. *Curry v. State*, 30 S.W.3d 394, 404 (Tex.Crim.App. 2000). This does not mean that all indictment allegations must be included, but it does mean that essential elements must be contained, such as the specific name of the victim. *Gollihar*, 46 S.W.3d at 254–56. Considering, then, the indictment as filed, we note first that application paragraphs charging appellant as both a principal and a party would have been authorized. Incorporating the specific language of the indictment, the hypothetically correct jury charge for this case would have permitted the jury to convict appellant if they found that:

(1) William T. Swartz;

(2) with intent to fraudulently obtain a benefit,[2] namely gasoline or cigarettes;[3]

(3) presented or used;

(4) an Exxon credit card;[4]

(5) with knowledge that the card was not issued to William Swartz; and

(6) with knowledge that it was not used with the effective consent of Terri Whitman

or if they found that

(1) Steven C. Sammons;

(2) with intent to fraudulently obtain a benefit, namely gasoline or cigarettes;

(3) presented or used;

(4) an Exxon credit card;

(5) with knowledge that the card was not issued to Steven C. Sammons; and

(6) with knowledge that it was not used with the effective consent of Terri Whitman; and

(7) William T. Swartz acted with the intent to promote or assist the commission of the offense aided STEVEN C. SAMMONS to commit the offense, if any, by his own actions and conduct during the commission of said offense,

2. We note that the statute does not require that a person be intending to fraudulently obtain a benefit for *himself*.

3. The indictment added "from Felicia Ratajski." The penal code statute itself does not list as an element that a benefit is obtained "from a person or business" or other similar language which would require the State to prove from whom the benefit was obtained. Therefore this information is surplusage as it is neither an essential element of the offense, nor necessary to provide particularity in order to provide notice for a required element, nor descriptive of a legally essential element, as is the phrase "gasoline or cigarettes" as to the required element of "benefit." *See Curry v. State*, 30 S.W.3d 394, 398–99 (Tex.Crim. App.2000). However, there was no question about this recitation at trial and the evidence adequately showed that the benefit was obtained from Felicia Ratajski.

4. The indictment specifically alleged that the card was "issued by Monogram Credit Bank of Georgia and bearing account number 444 401 014 6." However, even though descriptive of one of the elements required to be proved (the credit card), it is questionable whether this descriptive information would have to be contained in a hypothetically correct charge. *See Gollihar*, 46 S.W.3d at 256–58 (hypothetically correct jury charge need not contain the serial number of stolen go-cart as alleged in the indictment, clarifying the fatal variance doctrine) and *Chambers v. State*, 738 S.W.2d 780, 783 (Tex.App.—Fort Worth 1987, no pet.)(variance between card number at trial and card number in indictment not a fatal variance when there was other evidence identifying card). Even if this information were included in the hypothetically correct charge, appellant does not challenge the sufficiency of this element and, indeed, there was no dispute about the card used. Moreover, there was direct testimony as to the bank issuing the card and the account number and all testimony corresponded with the allegations in the indictment.

namely, by accepting and processing the credit card.[5]

As the jury would have been authorized to convict appellant as either a principal or a party, we must review the evidence actually presented to the jury in this case to determine whether it was legally sufficient under either theory of liability.[6]

We first consider the sufficiency of the evidence to support a conviction of appellant as a principal to the offense. We note that appellant does not contest the sufficiency of the evidence as to the elements which we list as numbers two through six. Appellant's sole argument on appeal went to the question of identity. Nonetheless, after considering the evidence presented to the jury as to each element required, we find that a rational jury could have found beyond a reasonable doubt that appellant, with intent to fraudulently obtain gasoline or cigarettes, used an Exxon credit card, with knowledge that the card was not issued to him and with knowledge that he did not have the consent of the cardholder, Terri Whitman, and so found him guilty as a principal to the offense.

We also find that a rational jury could have found the essential elements of the offense beyond a reasonable doubt under a hypothetically correct jury charge which charged appellant as a party to the offense and Steven Sammons as the principal. We disagree with appellant's assertion that the State failed to prove the issue of identity relative to Sammons. Appellant correctly cites *Anderson v. State,* 813 S.W.2d 177, 179 (Tex.App.—Dallas 1991, no pet.), for the proposition that an uncertain in-court identification of an accused as a perpetrator of a crime, standing alone, is insufficient to support a guilty verdict. However, the court in *Anderson* then went on to assert that "...an equivocal identification will not make a verdict improper for lack of evidence if other evidence corroborates it." *Id.* Moreover, it is well within the factfinder's province to consider both initial identifications and "retractions." *See Fernandez v. State,* 805 S.W.2d 451, 456 (Tex.Crim.App.1991)(when in direct testimony in a bench trial, witness retracted earlier statements identifying husband as being involved in crime and the state introduced, without objection, hearsay statements by the witness linking the defendant to the crime, it was up to the trial judge to decide which version of the story he believed). Indeed, as factfinder the jury must judge the witnesses and may believe all, some, or none of the testimony of a particular witness. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). It is questionable whether an

---

5. The actual jury charged added "knowing that the card had not been issued to the said STEVEN C. SAMMONS, and that said card was not used with the effective consent of Terri Williams, the cardholder." This language is subsumed in the language "with the intent to promote or assist the commission of the offense..." and need not have been repeated in the charge. *See* TEX. PEN. CODE ANN. § 7.02(a)(2) (Vernon 1994). In any event, the sufficiency of the evidence as to appellant's knowledge as to these matters is not contested in this appeal and the evidence in the record establishes such knowledge sufficiently.

6. In doing so, we review the evidence under the standard of *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), as previously noted. We do not, as appellant implies, "assume" that the jury would convict. The question before us, as in any legal sufficiency challenge, is whether, after reviewing the evidence in the light most favorable to the verdict, *any* rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct.2781 (emphasis added). The *Malik* standard merely provides us with the measure by which we determine what are the "essential elements of the offense" that we are to review.

equivocation such as "I don't know" after an earlier positive statement, can actually be considered a "retraction," as opposed to a mere conflict in testimony which is within the province of the jury to decide. *Id.* The jury is not only entitled to resolve conflicts but can even choose to disbelieve any "recantation." *Id.*

■ Moreover, in the present case, there was corroborating evidence. This was not a case where the witness made a hazy identification of a person she did not know and but for that identification there was nothing tying Sammons to the crime. Rather, the witness in this case knew Sammons, positively identified him as being at the store at the relevant time and place, tied him to the group that was with Swartz, pumped gas and purchased items with the card. As to the element of the identification of Sammons, we find that a rational jury could have found this element beyond a reasonable doubt. As appellant challenges no other aspects of the evidence in reference to his guilt as a party, and as in any case the evidence supports all the elements in a hypothetically correct charge of appellant as a party, we find that the evidence likewise was legally sufficient under that theory of liability.

### Conclusion

Having overruled appellant's sole issue, we affirm the judgment of conviction.