**Aaron Garza VEGA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–05–007–CR.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

July 27, 2006.

Rehearing En Banc and Rehearing
Overruled Aug. 31, 2006.

Ralph Martinez, Houston, for appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Amy Howell Alaniz, Asst. Dist. Atty., Rene A. Guerra, Crim. Dist. Atty., Edinburg, for state.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

By a two-count indictment, the State of Texas charged Aaron Vega with capital murder in the shooting death of Ricardo Cantu [1] and aggravated robbery [2]. A jury

---

**1.** *See* TEX. PEN.CODE ANN. § 19.03(a)(2) (Vernon Supp.2005) (stating that a person commits capital murder if he intentionally commits murder under section 19.02(b)(1) of the penal code in the course of committing or attempting to commit robbery). In Count 1, the indictment alleged that, on or about August 11, 2002, Vega intentionally caused the death of Ricardo Cantu by shooting him with a firearm while in the course of committing or attempting to commit robbery.

**2.** *See* TEX. PEN.CODE ANN § 29.03 (Vernon 2003) (stating that a person commits an offense if he causes serious bodily injury to another or uses or exhibits a deadly weapon in the course of committing robbery). In Count 2, the indictment alleged that, on or about August 11, 2002, while in the course of committing theft of property and with the intent to obtain or maintain control of property, Vega intentionally and knowingly caused

convicted Vega on both counts. He received the mandatory life sentence for capital murder. The jury assessed a thirty-year sentence for the aggravated robbery count. By three issues, Vega contends: (1) the evidence is legally and factually insufficient; (2) double jeopardy bars the aggravated robbery count; and (3) counsel was ineffective. We reverse and remand.

## I. RELEVANT FACTS

On August 11, 2002, Ricardo Cantu was found shot to death in his vehicle in a residential area. He sustained three fatal bullet wounds. Spent rounds were found in and near the vehicle. Earlier that day, Cantu spoke with his neighbor, Samuel Lopez. Lopez testified that Cantu asked him if he knew where Cantu could buy thirty pounds of marijuana. Lopez told him he would see if he "could get them for him." Lopez admitted he did not know where to buy marijuana. Lopez told Salvador Salas of Cantu's request. The two went to Vega's house in a vehicle with Jesus Cindo, Jr. Cindo and Lopez testified that, while outside Vega's house, they heard Vega say that he wanted to rob Cantu, a "buyer and distributor of marijuana." Present during Vega's conversation with Salas was Emmanuel De Leon. De Leon testified that, earlier that day, Vega told him about "a robbery that they were going to do" involving a "guy that had a lot of weed." Vega asked De Leon if he wanted to go and De Leon agreed. De Leon testified that Vega told him he would "get $10—to $15,000." De Leon further testified that Vega said some men from Mexico would be arriving "and plan everything to steal the weed from the guy.... He just told me they were professionals in these things."

Testimony conflicts as to how many men from Mexico actually arrived at Vega's house. Two arrived in a red truck. One arrived in a small black car. The men retrieved guns from the trunk of the car. De Leon testified that Vega, Salas, and the men from Mexico finalized the plan. "They were going to rob this man. They were going to rob some weed from him." The men were to pretend to buy marijuana and then steal it. When the men finished planning, "Sal and the other guys from Mexico went to rob the guy." The men were armed. Vega, De Leon, and Lopez stayed behind.

The victim's wife, Maria Elena Garza, testified that at about 7:00 p.m. that day Cantu went outside the home. A black car arrived. Cantu approached the vehicle to talk to the occupants. Because the car had dark tinted windows, Garza did not see how many persons were in the car. Approximately twenty minutes later, Cantu entered the house. She asked him who was in the car, and he answered "two people he knew." Garza testified Cantu left to buy bread. About twenty minutes later, she heard gunshots.

A neighbor, Steve Sandoval, testified that while driving home from work, he saw Cantu "getting ready to leave." Sandoval observed a small foreign car outside Cantu's residence with four people inside. A "young kid wearing a baseball cap," described as in his late teens or early twenties, exited the back seat of the car. About thirty minutes later, Sandoval heard what appeared to be six or seven gunshots.

De Leon testified that the men returned approximately fifteen minutes after leaving Vega's house. They talked to Vega and left. Each man had a gun. Vega told De Leon that "the man" was killed. Salas, Vega, and De Leon drove by the shooting scene. De Leon testified that Salas recounted the shooting:

serious bodily injury to Ricardo Cantu by shooting him with a firearm.

Sal said that when they got there, the man they were going to rob, he was sitting outside the gate in his car and everybody got there and they just pointed the guns at him. And then the man said—that's what I heard that they said, that the man said that he wasn't scared, that he was going to give them nothing, that he just tried to drive off, and that everybody started shooting. And then Sal said that he saw the action and he started shooting, too.

Vega took the guns to his girlfriend's house "to hide them there so that nobody could find them." Vega's girlfriend, Sara Linan, recanted her written statement to police. She admitted she told police she heard Vega tell Salas that "they were just supposed to scare the guy, not kill him." She denied telling police that Vega returned the guns to the men from Mexico and that they would probably use them again. The guns were never recovered.

A few days after the shooting, Lopez spoke with Vega. Lopez testified as follows:

Q: [W]hen you went to pick up [Vega] at his girlfriend Sara's house, what did you-all talk about?

A: I just asked him who had shot him.

Q: And what did he tell you?

A: That those guys were professionals, that that's what they did for a living.

Q: What guys.

A: The [ones from Mexico].

The medical examiner testified that Cantu's death was caused by three gunshot wounds to his body.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Vega asserts that the State's evidence as to his culpability as a party is legally and factually insufficient to sustain the conviction. The State responds that the evidence is sufficient.

### A. Legal Sufficiency Standard of Review

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Sorto v. State,* 173 S.W.3d 469, 472 (Tex.Crim.App.2005) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Escamilla v. State,* 143 S.W.3d 814, 817 (Tex.Crim.App. 2004). This standard is meant to give "full play to the [jury's] responsibility fairly" to "draw reasonable inferences from basic facts to ultimate facts." *Sanders v. State,* 119 S.W.3d 818, 820 (Tex.Crim.App.2003). We consider all the evidence that sustains the conviction, whether properly or improperly admitted. *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App.2001) (citing *Garcia v. State,* 919 S.W.2d 370, 378 (Tex.Crim.App.1994) (per curiam)).

The legal sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); *Swartz v. State,* 61 S.W.3d 781, 786 (Tex.App.-Corpus Christi 2001, pet. ref'd). This standard of legal sufficiency ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted. *Id.* We then determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

If we reverse a criminal case for legal insufficiency, we reform the judgment of conviction to reflect conviction for a lesser offense only if a jury charge on the lesser offense was either submitted or

requested but denied. *Collier v. State*, 999 S.W.2d 779, 782 (Tex.Crim.App.1999). Otherwise, we vacate the judgment of conviction for legal insufficiency and order a judgment of acquittal. *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex.Crim.App. 2003) (en banc).

### B. Factual Sufficiency

In a factual sufficiency review, we view all the evidence in a neutral light, both for and against the finding, and set aside the verdict if "proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Vodochodsky v. State*, 158 S.W.3d 502, 510 (Tex.Crim.App.2005) (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000); *Zuliani v. State*, 97 S.W.3d 589, 593–94 (Tex.Crim.App.2003)). In determining the factual sufficiency of the elements of the offense, we view all the evidence neutrally, not through the prism of "the light most favorable to the prosecution." *Johnson*, 23 S.W.3d at 6–7 (citing *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996)). In conducting such a review, we consider all of the evidence weighed by the jury, comparing the evidence which tends to prove the existence of the elemental fact in dispute to the evidence which tends to disprove it. *Id.* We are authorized to disagree with the jury's determination even if probative evidence exists which supports the verdict, but we must avoid substituting our judgment for that of the fact-finder. *Id.* at 8 (citing *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997)).

This Court measures the factual sufficiency of the evidence against a hypothetically correct jury charge. *Adi v. State*, 94 S.W.3d 124, 131 (Tex.App.-Corpus Christi 2002, pet. ref'd). If we reverse a criminal case for factual insufficiency, we vacate the judgment of conviction. *Clewis*, 922 S.W.2d at 133–34. We remand for a new trial a criminal case reversed for factual insufficiency so a second jury has the chance to evaluate the evidence. *Swearingen*, 101 S.W.3d at 97.

### C. The Elements of Capital Murder

In determining whether an accused participated as a party in an offense, a fact finder may examine the events occurring before, during, and after the commission of the offense and rely on actions of the accused that show an understanding and common design to commit the offense. *Hanson v. State*, 55 S.W.3d 681, 690 (Tex. App.-Austin 2001, pet. ref'd). Thus, conviction was authorized under the evidence in this case if a rational jury could find that Vega intentionally caused Cantu's death, either as a principal or as a party. *See* TEX. PEN.CODE ANN. § 19.03(a)(2) (Vernon Supp.2005); *see also Hanson*, 55 S.W.3d at 690. A hypothetically correct jury charge would instruct the jury to convict Vega if he (1) intentionally (2) committed murder (3) in the course of committing or attempting to commit robbery (4) either as a party or a principal.[3] TEX. PEN.CODE ANN. § 19.03(a)(2) (Vernon Supp. 2005). A person commits robbery if, among others, in the course of committing theft and with intent to obtain or maintain control of property, he intentionally, knowingly, or recklessly causes bodily injury to

---

**3.** The law of parties need not be pled in the indictment. *Sorto v. State*, 173 S.W.3d 469, 476 n. 23 (Tex.Crim.App.2005) (citing *Marable v. State*, 85 S.W.3d 287, 287 (Tex.Crim. App.2002)); *Malik v. State*, 953 S.W.2d 234, 239 (Tex.Crim.App.1997). In its brief, the State appears to acknowledge a "general application" of the law of parties in the court's charge and notes that Vega did not request a more specific application of the law of parties at trial.

another. Tex. Pen.Code Ann. § 29.02(a) (Vernon 2003). A person is criminally responsible for an offense committed by the conduct of another if, among others, he, acting with intent to promote or assist the commission of the offense, solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Pen.Code Ann. § 7.02(a)(2) (Vernon 2003). An act is committed intentionally when it is the actor's conscious objective or desire to engage in the conduct which causes the result. Tex. Pen.Code Ann. § 6.03(a) (Vernon 2003). A person acts knowingly when he knows that the conduct is reasonably certain to cause the result. Tex. Pen.Code Ann. § 6.03(b) (Vernon 2003).

 Intent may be inferred from acts, words and conduct of the accused. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App.1991) (en banc); *Mouton v. State*, 923 S.W.2d 219, 223 (Tex.App.-Houston [14th Dist.] 1996, no pet.). A culpable mental state is almost always proven through circumstantial evidence. *Warren v. State*, 797 S.W.2d 161, 164 (Tex. App.-Houston [14th Dist.] 1990, pet. ref'd). Intent is a fact question and may be inferred from circumstantial evidence. *See Salinas v. State*, 163 S.W.3d 734, 739–40 (Tex.Crim.App.2005); *Guevara v. State*, 152 S.W.3d 45, 50 (Tex.Crim.App.2004). The jury must review all the evidence and may reasonably conclude from the circumstantial evidence that the requisite mental state existed. *Mouton*, 923 S.W.2d at 223.

### D. Discussion

 Vega maintains the evidence is legally and factually insufficient to prove he is guilty on principal theory. He reminds us that he was at his residence, he was not the shooter, he did not communicate or assist the shooters at the scene, and, he stresses, he did not possess nor did the State prove the requisite culpable mental state to kill under section 7.02(a)(2) of the penal code.[4] The State counters that physical presence is not required for party liability, and the evidence proves Vega intended to kill.

The State prosecuted under the law of parties and the jury was instructed on the law of parties. Vega put a plan in place to rob Cantu of marijuana. He was present when the assailants met at his residence and armed themselves for purposes of perpetrating a robbery against Cantu. Cantu was ultimately shot and killed. A jury may infer the intent to kill from the use of a deadly weapon. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App. 1996); *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex.Crim.App.1993) (holding that if a deadly weapon is used in a deadly manner, the inference is almost conclusive that the defendant intended to kill). Thus, the jury could have rationally inferred from the evidence that Vega intended to promote or assist in the murder of Cantu when he did nothing to stop the assailants from arming themselves, thereby rejecting the defense theory that he intended solely a robbery. After viewing the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found that Vega facilitated a plan by which he recruited the persons involved and, consistent with the plan, the persons met, armed themselves, and proceeded to rob the victim and, in the course of committing the robbery, killed Cantu. Accordingly, the jury could have found that the State proved the essential elements of capital murder beyond a reasonable doubt. *See Sorto*, 173 S.W.3d at 475. We overrule Vega's legal sufficiency challenge.

 On the other hand, all of the evidence that could legally support a rational jury's conclusion that Vega is guilty of

4. Tex. Pen.Code Ann. § 7.02(a)(2) (Vernon 2003).

capital murder is nevertheless so weak that our confidence in the jury's verdict is undermined. *See Vodochodsky,* 158 S.W.3d at 510–511. The evidence militates against the conclusion that Vega solicited, encouraged, directed, aided or attempted to aid the assailants in killing Cantu. The record is devoid of information on the details of a murder plot, and there is no other information in the record suggesting that Vega planned the murder with the assailants. Although there was some evidence that the men from Mexico were "professionals," Vega's plan as communicated to the State's witnesses was to use them to rob Cantu of marijuana. The plan escalated to armed robbery when the assailants armed themselves with the weapons found in the vehicle in which one man from Mexico arrived and Vega did nothing. While it is true that Vega hid the weapons after the murder, this is insufficient to establish the culpable mental state to commit murder in the course of committing robbery. Indeed, none of that evidence necessarily suggests that Vega acted with intent to promote or assist the assailants to kill Cantu. None of Vega's statements to the State's witnesses directly refer to killing Cantu. Rather, one statement indicates that they were to scare Cantu, not kill him. The evidence does not suggest that Vega may have known of a plan to kill Cantu. The evidence does not show that Vega provided the weapons or the ammunition. There is no evidence that he actually did any affirmative act to assist the assailants with a plan to kill Cantu. Instead, the evidence shows that, Salas, one of the assailants, began shooting when another assailant fired his weapon.

The State had the burden to adduce evidence to prove Vega acted as a party or as a principal in Cantu's murder in the course of committing robbery. The evidence establishes that Vega acted as a party to the aggravated robbery but not the murder. Vega did nothing to aid, assist, encourage, solicit, direct or attempt to aid the shooters. Culpability as a party under section 7.02(a)(2) of the penal code is factually insufficient.[5] Accordingly, we conclude that proof of Vega's culpability was so weak as to undermine confidence in the jury's determination. The evidence was factually insufficient to convict. We sustain the sub-issue in Vega's first issue challenging the factual sufficiency of the evidence. We vacate the judgment as to the capital murder count and remand this case for Vega to answer the charges in the indictment. *See Clewis,* 922 S.W.2d at 133–34; *Swearingen,* 101 S.W.3d at 107.

The State concedes that, based on the evidence and the language of the indictment in this case, the aggravated robbery offense is a lesser included offense of the capital murder offense. The State further concedes that Vega's conviction for both offenses is barred by the doctrine of double jeopardy if the capital murder conviction stands. Because we remand for a new trial a criminal case, reversed for factual insufficiency, the State is authorized to elect to proceed on its capital murder charge in the indictment, the more serious charge. Because we reverse for factual insufficiency, we vacate the judgment of conviction. *Clewis,* 922 S.W.2d at 133–34. We remand for a new trial so that a second jury may have the chance to evaluate the evidence. *Swearingen,* 101 S.W.3d at 97. Thus, because we reverse and remand, we will not render judgment on the lesser included offense of aggravated robbery. *See* TEX.R.APP. P. 43.2(c), (d).

### III. CONCLUSION

While the evidence, viewed in the light most favorable to the verdict and indulging all inferences in the State's favor, may be

---

5. TEX. PEN.CODE ANN. § 7.02(a)(2).

sufficient to withstand a challenge to its legal sufficiency, it does not survive the challenge to its factual sufficiency. Because the evidence is factually insufficient to sustain the conviction, we reverse and remand. *See Clewis*, 922 S.W.2d at 133–34; *Swearingen*, 101 S.W.3d at 107. Because of our disposition, we do not reach Vega's remaining issues. Tex.R.App. P. 47.1.

Dissenting Opinion by Justice FEDERICO HINOJOSA.

Dissenting Opinion on Designation by Justice ERRLINDA CASTILLO.

Dissenting Opinion by Justice HINOJOSA.

I respectfully dissent because I disagree with the majority's holding that the evidence is factually insufficient to support the jury's finding that appellant, Aaron Garza Vega, is guilty of the offense of capital murder.

In a factual sufficiency review, we review all the evidence in a neutral light and determine whether evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Threadgill v. State*, 146 S.W.3d 654, 664 (Tex.Crim.App.2004). Our neutral review of all the evidence, both for and against the challenged elements, looks to determine whether proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or whether proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See Zuniga v. State*, 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004). A proper factual sufficiency review must consider the most important evidence that the appellant claims undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003). However, we ap-

proach a factual sufficiency review with appropriate deference to avoid substituting our judgment for that of the fact finder. *Johnson v. State*, 23 S.W.3d 1, 6–7 (Tex. Crim.App.2000). Every fact need not point directly and independently to the accused's guilt. *Vanderbilt v. State*, 629 S.W.2d 709, 716 (Tex.Crim.App.1981). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Id.*

The majority correctly states that the State had the burden of producing evidence showing that appellant acted as a party or principal in the murder while in the course of committing robbery. The majority holds the evidence is factually insufficient to establish culpability as a party under section 7.02(a)(2) of the penal code. *See* Tex. Pen.Code Ann. § 7.02(a)(2) (Vernon 2003).

However, the jury was also instructed that it could find appellant guilty of capital murder as a co-conspirator under section 7.02(b) of the penal code, and the majority's opinion fails to address the factual sufficiency of the evidence under section 7.02(b). Section 7.02(b) of the Texas Penal Code provides:

If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out the conspiracy.

Tex. Pen.Code Ann. § 7.02(b) (Vernon 2003).

Appellant contends the evidence is factually insufficient under section 7.02(b) because (1) the conspiracy to rob never contemplated murder, (2) appellant was not present at the scene the shooting, and

(3) the spontaneity of the killing outweighs any evidence of guilt.

Section 7.02(b) does not require that the State prove a defendant contemplated or intended the victim's murder. In fact, 7.02(b) specifically states that intent is not required. Furthermore, a defendant need not have been physically present in order to be held responsible as a party under section 7.02(b). *See Longoria v. State,* 154 S.W.3d 747, 755 n. 6 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) (affirming capital murder conviction under section 7.02(b) where defendant conspired to commit robbery that resulted in the murder of a deputy, but defendant was not present at the scene of the murder). Finally, it should be anticipated that a murder would occur where evidence shows the defendant is aware that cohorts in a planned robbery are armed with guns. *See id.* at 756–57 n. 7 (fact that defendant supplied handgun to be used in robbery was evidence that murder should have been anticipated as result of robbery); *Williams v. State,* 974 S.W.2d 324, 330 (Tex.App.-San Antonio 1998, pet. ref'd) (defendant should have anticipated murder that occurred during robbery where he knew co-conspirator had gun).

The evidence shows that appellant participated in a conspiracy to rob the victim, and in the attempt to carry out that robbery, a murder was committed. Because appellant knew that firearms were being used to facilitate the robbery, he should have anticipated that a murder was possible. *See Longoria,* 154 S.W.3d at 756–57 n. 7; *Williams,* 974 S.W.2d at 330. I conclude that proof of appellant's guilt is not so obviously weak as to undermine confidence in the jury's determination or greatly outweighed by contrary proof. Therefore, I would hold the evidence is factually sufficient under section 7.02(b) of the penal code to support the jury's finding that appellant is guilty of the offense of capital murder, and I would address appellant's remaining issues. For these reasons, I respectfully dissent.

Dissenting Opinion on Designation by Justice CASTILLO.[1]

Respectfully, I believe the opinion and the dissent meet the requirements to be designated a published opinion under the criteria of rule 47.4. *See* Tex.R.App. P. 47.4. Rule 47.4 states, in pertinent part:

> An opinion *must* be designated a memorandum opinion unless it does any of the following:
>
> (a) establishes a new rule of law, alters or modifies an existing rule, or applies an existing rule to a novel fact situation likely to recur in future cases;
>
> (b) involves issues of constitutional law or other legal issues important to the jurisprudence of Texas;
>
> (c) criticizes existing law; or
>
> (d) resolves an apparent conflict of authority.

Tex.R.App. P. 47.4. (Emphasis added). The majority opinion and the dissent do not meet any of the criteria with respect to designation and, thus, designation as an "opinion" is the exception and not the rule. *See id.* Because I would designate the opinion as a memorandum opinion, I respectfully disagree with the panel majority with respect to designation. *Id.* Even so, I am pleased that the parties receive their answer today, under either designation.

---

1. The designation of this opinion is also mandated by the majority's decision on designation.