

# NUMBER 13-06-00553-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ERIC LEONARD SIPERKO,                                              Appellant,

v.

THE STATE OF TEXAS,                                               Appellee.

On appeal from the 264th District Court of Bell County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Wittig[1]**
**Memorandum Opinion by Justice Wittig**

Appellant, Eric Leonard Siperko, was indicted and convicted of the capital murder

of Jason Gonzales by shooting him with a firearm in the course of committing or attempting

to commit the offense of robbery. *See* TEX. PENAL CODE. Ann. § 19.03 (Vernon 2004).

After the trial by jury, sentence was orally pronounced in the trial court the same day.

---

[1] Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

Notice of appeal was timely filed. In a single issue appellant challenges the factual sufficiency of the evidence to support the conviction of capital murder.[2]

## 1. Standard of Review

In reviewing legal sufficiency, we look at all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Legally sufficient evidence supporting a conviction exists if the court, after reviewing the evidence in the light most favorable to the prosecution, determines that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979).

Evidence may be factually insufficient if: (1) it is so weak as to be clearly wrong and manifestly unjust, or (2) the adverse finding is against the great weight and preponderance of the available evidence. *Roberts v. State,* 220 S.W.3d 521, 524 (Tex. Crim. App. 2007) (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). The evidence, though legally sufficient, is factually insufficient if it is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or if, considering conflicting evidence, the jury's verdict, is nevertheless against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). A factual sufficiency review requires the reviewing court to consider all of the evidence. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). A clearly wrong and unjust verdict occurs where the

---

[2] Although appellant frames his issue in terms of both legal and factual sufficiency, he concedes the evidence is legally sufficient. He states that there was some evidence appellant should have foreseen the murder resulting from the conspiracy to commit robbery.

jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Sells v. State*, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003). The Texas Court of Criminal Appeals in *Roberts* explained that a reversal for factual insufficiency cannot occur when "the greater weight and preponderance of the evidence actually favors conviction." *Roberts,* 220 S.W.3d at 524.

A person commits the offense of capital murder if he commits murder as defined under Section 19.02(b)(1), and intentionally commits the murder in the course of committing or attempting to commit robbery. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 2004). The trial court charged on the law of the parties set out in sections 7.02(a), and (b). TEX. PENAL CODE. Ann. § 7.02(a), (b). Under section 7.02(a)(2), a person is criminally responsible for an offense committed by another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). In a capital murder case, the jury must find that the party-defendant intended to cause the murder. *See Duke v. State*, 950 S.W.2d 424, 427 (Tex. App.–Houston [1st Dist.] 1997, pet. ref'd). Under Section 7.02(b), a person is criminally responsible for an offense committed by another if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. TEX. PENAL CODE ANN. § 7.02(b). The court's charge generally reflected the law as stated.

## 2. The Evidence

The appellant was tried with two other defendants, Alligood and Hammock. The fourth member of the group, Harris, was not tried at the time and was the principal witness for the State. Most of the crucial evidence outlined below was given by Harris, an accomplice as a matter of law. According to Harris, the four joined together to commit car burglaries. They carried out several burglaries together the week before the murder. All four were again together when the group decided to begin "kick door" or home invasion robberies.

One of the four, Hammock, told Harris and Alligood they needed a gun in case of resistance. All four met at his house every night for the week. Alligood, the only member of the group old enough to purchase a firearm, went out and bought the weapon and instructed Hammock how to use the .22 pistol. On the night of the murder, the four gathered wearing dark clothing, gloves and a hat or something to obscure their faces. They wore gloves "so we wouldn't leave any prints." The four began the evening committing car burglaries, stealing checks from the automobiles. After some car burglaries, the four stopped to see if anyone needed anything. Hammock took out the pistol "to make sure we knew he had the gun." Hammock was seated in the back seat of the Honda next to appellant when he showed the weapon. Some of the group had zip tie clips fashioned into handcuffs and a utility knife. Appellant had zip ties, like the black bands used to bundle newspapers. At one point the group decided not to do a kick door that night but later changed their mind and proceeded to pick out a house to burglarize.

After cruising the neighborhood, the group randomly decided to pick the home of Captain Gonzales. Harris and Alligood cut the power and phone lines while appellant and Hammock, armed with the pistol, went to the back of the house and reported back that

4

someone was asleep in the home. The group decided to proceed with a kick door. The evidence conflicted as to whether appellant himself kicked in the door. He and Hammock proceeded to the master bedroom where Captain Gonzales had been asleep. Appellant admitted that the victim woke up and came towards the back door. Someone yelled "get down," then gun fire was heard by Harris. Appellant stated "That is when the first shot was fired. . . ."

Appellant ran to the other two. Gonzales groaned. Hammock told Gonzales to get down again then more shots were fired. After the fourth shot, Harris heard a loud thud coming from the kitchen. The four continued searching the residence looking for anything valuable to steal. Appellant and Hammock returned to the master bedroom and found a helmet, a laptop computer and cell phones. The group took the laptop, the Apache flight helmet, cell phones, fatigues, PT gear, and military identification of Captain Gonzales. Harris did not see appellant take anything from the Gonzales home. Alligood took the victim's truck keys. Appellant helped search the home and helped unload the stolen goods at Harris's house.

The same night of the murder, appellant and the others returned to the Gonzales home. They took two cases of DVD's, some speakers and tools. Some of the items were placed in Harris's car and some in Gonzales's truck, which was then also taken. The usual agreement was to spit the stolen items equally among the four.

Later, appellant went with Harris and followed Hammock to the lake with the victim's pickup which was then run into the water. The four also went to a 7-11 in the abortive attempt to negotiate the stolen checks. Appellant was videotaped at the store at that time. Thus, appellant was present when the group tried to negotiate the checks stolen earlier in the evening.

5

Appellant helped move some of the stolen property from Harris's house to Hammock's. Appellant drew a map for police that led to the recovery of the Captain's truck. Non-accomplice, Karen Trejo, saw appellant coming in and out of the house when the stolen property was being unloaded. As far as she knew, appellant had nothing to do with the pistol.

The evidence showed that appellant did not go to the store when the pistol was purchased. Also admitted into evidence was the redacted statement of appellant. In it he admits going to the house "to steal stuff out of the house." According to the statement, the man woke up, came toward the back door and the first shot was fired. Appellant ran to the car and heard three more shots. The four left and went to the 7-11 store on W. S. Young. Appellant denied taking anything from the deceased.

Appellant notes the record shows, and we agree, that he did not put the truck in the lake, that Hammock was the only one with the weapon at the Captain's home, and there were no fingerprints on the pistol. Appellant argues, with some support from the record, that Harris, the State's principal witness, was impeached on a number of details concerning the presence of hats, gloves, and face coverings, as well as his version of seeing the pistol a few hours before the burglary. Harris failed to mention many details of his testimony to the police in his initial statement. No fingerprints on the stolen items matched appellant. Appellant points out that he was not present during the planning to obtain the weapon, its purchase, or during the discussion on how to use it. However, he was present before the others returned a second time to purchase the pistol. Appellant was also seated next to Hammock in the Honda when Hammock showed the pistol to the group shortly before the murder.

6

Hammock, Alligood, and Harris all denied they were the person who actually shot Gonzales. Statements of the three defendants were admitted into evidence in redacted form. The jury was instructed that the redacted statements could not be used against appellant on the question of his guilt.

Appellant called Corina Martinez, who testified she knew Harris well and that he told her he had a gun. She stated that Harris and Hammock had a gun. Co-defendant Hammock's father testified appellant came to his house, and he thought appellant was hiding something under his shirt. Appellant was said to have then gone to Hammock's room for about 20 seconds and left, just before police arrived and searched the home looking for the weapon. The pistol was then found under Hammock's mattress.

### 3. Discussion

Appellant first argues that under the single count of capital murder by intentionally causing the death of an individual, by shooting him with a firearm, in the course of committing or attempting to commit the offense of robbery, only two theories would allow a conviction of appellant of capital murder. One is the law of parties under penal code section 7.02(a). *See* TEX. PENAL CODE Ann. § 7.02(a). The other is when in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carry out of the conspiracy. *Id.* § 7.02 (b).

Appellant does not deny there is sufficient evidence of an intentional killing of Gonzales in Bell County on June 3, 2005, in the course of a robbery. Further, appellant states that Hammock, Alligood, and Harris conspired to commit a robbery and that each

7

of them had reason to believe that one of the three possessed a handgun that they conspired to obtain for the express purpose of use in the burglary they intended to commit. Appellant further argues that, though there is some evidence, however weak, that appellant should have foreseen the murder as a result of carrying out the conspiracy to commit burglary or robbery, the evidence is factually insufficient to support a jury finding that he acted as a party to the offense under section (a) or (b). *Id.* § 7.02(a), (b).

Under section 7.02(a), appellant argues it is necessary to prove the charged offense was intended by appellant. *See* TEX. PENAL CODE ANN. § 7.02(a)(2). According to appellant, there is insufficient evidence that he intended to promote or assist the murder. Even if this were true, the jury was also charged under section (b). *Id.* § 7.02(b). Section (b) provides that if in an attempt to carry out a conspiracy to commit one felony, another felony is committed, all conspirators are guilty of the felony actually committed, even without intent, if the offense was committed in the furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out the conspiracy. *Id.*

The testimony of Harris outlined above established a complete case of capital murder during the commission of a robbery. The four carried out multiple robberies. They then decided to escalate their robberies to "kick door" home entries. A weapon was purchased by Alligood in case they faced resistance. The four were aware that Captain Gonzales was asleep in his home and might resist. They proceeded anyway, in the dark of night, with a loaded handgun, kicked in the door and shot Gonzales four times. Appellant was present when the group decided to escalate their crimes to night home invasions, participated in several robberies with the group both before and on the night of the murder, helped with the random selection of the victims's home, was seated next to Hammock when he showed the weapon in the car before the kick door, and the group

8

confirmed that Hammock had the pistol before entering the home when they did an equipment check. Appellant performed numerous acts in furtherance of the conspiracy to rob Captain Gonzales' home, including either kicking in the back door, or accompanying the person who kicked in the door. Appellant accompanied Hammock, who was armed with the murder weapon, and the two went into the deceased's bedroom with zip ties to subdue Gonzales. Appellant again returned to the master bedroom after the murder and searched for items to steal.

While it is true that Harris was an accomplice, his testimony was amply corroborated by appellant's own statement, the testimony of Martinez, and the video tape, among other evidence. *See Cathey v. State*, 992 S.W.2d 460, 462. (Tex. Crim. App. 1999) (if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, the requirement of TEX. CODE CRIM. PROC. ART. 38.14 has been fulfilled).

Appellant cites *Vega v. State*, 198 S.W.3d 819, 826 (Tex. App.–Corpus Christi, 2006 (pet. granted in part) (Vega did nothing to aid, assist, encourage, solicit, direct or attempt to aid the shooters; culpability as a party under section 7.02(a)(2) of the penal code is factually insufficient). He argues that in *Vega*, the defendant helped plan a robbery and even assisted in hiding the murder weapons afterward. However, as the State argues, Vega worked on a plan for some men from Mexico to rob the victim. Vega stayed behind and told his girlfriend that they were suppose to scare the guy, not kill him.

We observe that *Vega* does not address penal code section 7.02(b) under which intent to commit murder is not required. TEX. PENAL CODE ANN. 7.02(b), *Vega* is further factually distinguishable because, unlike *Vega*, appellant was involved in a conspiracy involving all four participants, all agreed to the kick door escalation, appellant was at the scene and participated in the robbery, and appellant knew there was a weapon. The group

9

also agreed to subdue the sleeping man and made preparations for resistance from the homeowner. The required intent to rob was admitted by appellant himself. *See id.*

Appellant also cites *Vodochodsky v. State*, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005) (the overwhelming weight of the evidence mitigates against the conclusion that Vodochodsky solicited, encouraged, directed, aided or attempted to aid Engleton in committing the offense; all the evidence that could legally support a rational jury's conclusion is nevertheless so weak that confidence in the jury's verdict is undermined). Again in *Vodockodsky*, section 7.02(b) did not apply and the State relied upon section 7.02(a). TEX. PENAL CODE ANN. § 7.02(a), (b). There was no underlying conspiracy to do an unlawful act. *Vodockodsky* involved a complicated factual scenario, and the defendant did go with the shooter to buy ammo, bailed him out of jail, and knew he was over the edge. However, the overwhelming weight of the evidence indicated that Vodockodsky did not solicit, encourage, direct, aid or attempt to aid the shooter in the commission of capital murder. Here, appellant actively participated in the conspiracy to rob Gonzales. No intent to murder was required. And appellant's intent to commit robbery was admitted. Appellant and his co-conspirators anticipated or should have anticipated the consequences of kicking down the back door of a sleeping man at 1:30 a.m. when they went in armed with a deadly weapon. They prepared for resistance and agreed Gonzales must be subdued.

After seeing Captain Gonzales asleep, the four were at the back of the house discussing the situation. "We were figuring out whether or not we actually wanted to proceed with burglarizing the house, sir." The State asked: "Okay. And who decided, if anything, what to do?" Harris responded: "It was a group decision, sir." The group decided to do a kick door. Harris and Alligood went up the left side of the house. Appellant and Hammock were assigned to go into the bedroom and subdue Captain Gonzales and

search the room.   This they did, resulting in the death of the Captain.

Appellant's own statement, which showed his participation in the decedent's robbery and his presence at the murder scene, established that he was, at a minimum, a party to capital murder. *See Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993).  When the trial court's charge authorizes the jury to convict on more than one theory, as it did in this case, the verdict of guilt will be upheld if the evidence is sufficient on any of the theories. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).  Pursuant to Texas Penal Code sections 7.01 and 7.02, an individual can be convicted as a party to an offense if that offense was committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. *Id.* (citing TEX. PENAL CODE ANN.  § 7.01).

## 4. Conclusion

Viewing the verdict of the jury in a neutral light, it is supported  by factually sufficient evidence. *See Johnson*, 23 S.W.3d at 7.  The conviction of capital murder is not contrary to the great weight of the evidence nor is it so weak as to be clearly wrong and manifestly unjust. *See Roberts,* 220 S.W.3d at 524.   The verdict does not demonstrate that it is unjust, shocks the conscience, or demonstrates bias. *See Sells*, 121 S.W.3d at 754.  We affirm the judgment of conviction for capital murder and the sentence of the trial court.

DON WITTIG,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this the 2nd day of April, 2009.

11