

**NUMBER 13-09-00585-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**RICARDO GARZA LOPEZ,**                                     **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                         **Appellee.**

---

### On appeal from the 430th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Chief Justice Valdez**

A jury found appellant, Ricardo Garza Lopez, guilty of capital murder, and because the State did not seek the death penalty, the trial court assessed punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. §§ 12.31(a)(2), 19.03(a)(2) (Vernon Supp. 2010). By eight issues, Lopez contends that: (1) the evidence is legally and factually

insufficient to support his capital murder conviction; (2) the "trial court committed reversible error by instructing the jury abstractly on the law of parties respecting [Texas Penal Code section] 7.02(b), but not meaningfully including that abstract theory of criminal responsibility in the subsequent application paragraph"; (3) the "trial court committed reversible error by including an unsubstantiated and prejudicial comment on the weight of the evidence in [the] application paragraph [of the jury charge] by simply denominating, or characterizing, two unnamed persons as conspirators"; (4) the trial court erred by including four lesser-included offenses in the jury charge; (5) the trial court abused its discretion in allowing hearsay testimony from several investigators; (6) "the trial court abused its discretion in allowing . . . [Investigator Max] Cantu to testify about an ultimate issue of fact for the jury"; and (7) "the trial court abused its discretion in overruling [Lopez's] bolstering objection to . . . [Investigator] Fernando Tanguma." We affirm.

## I. BACKGROUND

On June 8, 2008, eighty-three-year-old Elena Ayala was shot as she rode in the backseat of her daughter and son-in-law's black Chrysler 300.

Modesta Diaz testified that at 9:30 p.m., she and her husband, Jesus Mario Diaz, picked up her mother, Ayala, of whom they were the primary caretakers, from the home of Margarita Esparaza, one of Ayala's daughters. The trio proceeded to the Diazes's residence with Jesus in the driver's seat, Modesta in the front passenger's side seat, and Ayala in the back passenger's side seat. Around 9:50 p.m., Modesta noticed a vehicle, which she later described as a "van" or "small Blazer" pass and "cut[] in front" of her family's Chrysler 300 as they drove on Depot Road near the Monte Cristo

2

intersection in Edinburg, Texas. The vehicle stopped, and Jesus honked. Modesta saw a man "with his face covered" exit the back passenger's side door of the vehicle with "a pistol" in his hand. Modesta told Jesus, "Let's get out of here. Let's go speeding fast. Let's get out of here." Jesus reversed, accelerated backwards, and told Modesta "to get down on the floorboard." Modesta then heard one gunshot. Jesus turned the Chrysler around and drove away from the shooter, south towards McAllen, Texas. Modesta testified that at the time of the shooting, she did not know why someone had shot at the Chrysler.

Modesta testified that as they drove away, Ayala stated, "I got shot." Modesta tried to calm her mother and told her that the sound was only "a fire cracker," but Ayala protested, "No, my daughter. It was a shot. I got hit." Modesta turned on the Chrysler's interior light, saw blood, and confirmed that Ayala had been shot. Modesta called 911. According to Modesta, the 911 dispatcher "told me . . . not to move—for me to stay there. Well, we didn't want to stay there so we drove all the way to 10th [Street] and [Highway] 107 at the Valero, and that's where we waited." An ambulance arrived at the Valero and transported Ayala to a nearby hospital where she was pronounced dead.

Norma Jean Farley, M.D., the chief forensic pathologist for both Hidalgo and Cameron Counties, performed the autopsy on Ayala's body. Dr. Farley recalled that Ayala's injuries were consistent with a "perforating gun[]shot," which she defined as a gunshot that "went through the body, and there was no bullet recovered." Dr. Farley observed that a bullet had travelled "almost straight through" Ayala's torso—entering on the left lateral side of Ayala's chest and exiting on the right—puncturing her abdomen,

3

diaphragm, stomach, and liver. Dr. Farley concluded that the cause of death was a gunshot wound to Ayala's chest and abdomen.

Hidalgo County crime scene specialist, Eduardo Aleman, testified that a bullet entrance hole was found on the back driver's side of the Chrysler and that one bullet was recovered from inside the vehicle. He also testified that one spent casing was recovered at the scene of the shooting and that the evidence supported the theory that only one shot was fired at the Diaz's Chrysler.

In August 2008, Texas Ranger Robert Matthews met with and questioned Lopez's friend, Oziel Gutierrez, about the June 8 shooting. Gutierrez testified that he gave a statement to Ranger Matthews that Lopez "had come to my house and . . . [Lopez] started talking to me about a murder that had taken place. And that he was like—you know—somewhat involved, because he had loaned the gun to some people . . . ." Gutierrez denied knowing the names of the people to whom Lopez lent the gun, but stated that Lopez had lent them the gun "[t]o steal some rims" for "a vehicle," and Lopez drove a Chrysler 300.

On August 22, 2008, Ranger Matthews and Investigator Fernando Tanguma went to Lopez's home. Lopez agreed to go to the Hidalgo County Sheriff's Office to speak with the officers. While en route to the sheriff's office, the officer stopped at a "mobile unit."[1] Lopez told the officers that he planned to speak to an attorney before giving a statement. At that point, the officers stopped questioning Lopez and decided to continue to the sheriff's office. Investigator Tanguma testified that as they drove to the sheriff's office, Lopez told him that "he knew what I [Investigator Tanguma] was talking about. He told me that it was a .40 caliber handgun. He told me that the gun was

_____

[1] Investigator Tanguma defined a "mobile unit" as a "portable" sheriff's office.

4

located underneath his house."[2]  The officers drove back to Lopez's residence, and Lopez consented to the search of his house.  Investigator Tanguma testified that Lopez resided in a frame home that was lifted off the ground by blocks.  Investigator Tanguma recalled, "[Lopez] pointed out where the gun was. . . .  He walked to the corner of the residence and pointed . . . he told me 'If you stick your hand under there you can grab the gun, and it's wrapped in a newspaper, and it's there in the corner.'"  Investigator Tanguma complied and recovered the firearm.

Forensic firearms and tool-marks examiner, Richard Hitchcocks, conducted a comparative analysis between the bullet, cartridge, and firearm recovered by police.  Based on his analysis, Hitchcocks opined that the cartridge recovered near the intersection of Depot Road and Monte Cristo was fired from the firearm located under Lopez's house.  Hitchcocks was unable to conclusively determine whether the bullet recovered from the Diaz's Chrysler was fired from the firearm found under Lopez's home; however, he "could not eliminate that firearm as the one that that bullet may have been fired from."

At the conclusion of the trial, a jury convicted Lopez of capital murder and punishment was assessed at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice.  *See id.*  Lopez filed a motion for new trial.  A hearing was held, and the motion was subsequently denied by the trial court.  This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

---

[2] On appeal, Lopez does not challenge the voluntariness of his statements to police.

By his first and second issues, Lopez contends that the evidence is legally and factually insufficient to support the jury's verdict. Specifically, Lopez asserts that the evidence is insufficient to support Lopez's conviction "either as a principal and/or a party and/or a conspirator" to capital murder.

## A.    Standard of Review

The Court of Criminal Appeals has recently held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *8, *14 (Tex. Crim. App. Oct. 6, 2010) (plurality opinion). Accordingly, we review Lopez's claims of evidentiary sufficiency under "a rigorous and proper application" of the *Jackson* standard of review. *Id.* at *11.

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 2010 WL 3894613, at *5 (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt."). "[T]he fact[-]finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319 (emphasis in original);

6

*see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979) ("The jury, in all cases, is the exclusive judge of facts proved and the weight to be given to the testimony . . . ."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

In the present case, the jury charge included general instructions on the concept of criminal responsibility under the law of parties. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2003); *id.* § 7.02(b) (providing that a party is criminally responsible for the conduct of another "[i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy"). The application paragraph applied the law of the parties under section 7.02(a)(2), but did not apply the section 7.02(b) concept of criminal responsibility for the anticipated result of a conspiracy.

The sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Because a hypothetically correct jury charge in this case would authorize the jury to convict on either section 7.02(a)(2) or 7.02(b), we must determine whether the evidence is sufficient under either of these alternative theories of liability. *See Garza Vega v. State*, 267 S.W.3d 912, 915-16 (Tex. Crim. App. 2008).

**B.    Applicable Law**

7

Under section 7.02(a)(2), "[a] person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2). An act is committed intentionally when it is the actor's conscious objective or desire to engage in the conduct which causes the result. *Id.* § 6.03(a) (Vernon 2003). A person acts knowingly when he knows that the conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Intent may "be inferred from circumstantial evidence[,] such as acts, words, and the conduct of the appellant." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *see also Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (stating that a fact-finder may infer both knowledge and intent from the defendant's acts, words, or conduct and from the nature of the wounds inflicted on the victim); *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex. Crim. App. 1984) (noting that the requisite culpable mental state may also be inferred from the surrounding circumstances).

A person may be found guilty of capital murder under the law of parties. *Johnson v. State*, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992) (en banc); *see also Vega v. State*, No. 13-05-007-CR, 2010 WL 2966861, at *3 (Tex. App.–Corpus Christi July 29, 2010, pet. ref'd) (mem. op. on remand, not designated for publication). A person commits capital murder if he or she intentionally or knowingly causes the death of an individual while in the course of committing or attempting to commit, among other things, robbery. TEX. PENAL CODE ANN. §§ 19.02(b)(1) (Vernon 2003), 19.03(a)(2). "In determining whether a defendant participated in an offense as a party, the fact[-]finder may examine the events occurring before, during, and after the commission of the

8

offense and may rely on actions of the defendant that show an understanding and common design to commit the offense." *Frank v. State*, 183 S.W.3d 63, 73 (Tex. App.–Fort Worth 2005, pet. ref'd). Furthermore, "[c]ircumstantial evidence may be used to prove one is a party to an offense." *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985).

## C.    Analysis

Lopez argues that the evidence is insufficient to support his conviction because the State failed to prove, beyond a reasonable doubt, that "he harbored a specific intent that a murder be committed," because the evidence showed that "murder was not part of [his] plan" and, instead, was "the result of something gone wrong."

Gutierrez testified Lopez "had come to my house and . . . [Lopez] started talking to me about a murder that had taken place. And that he was like—you know—somewhat involved, because he had loaned the gun to some people . . . ." Gutierrez also testified that Lopez loaned the gun to unidentified individuals "[t]o steal some rims" for "a vehicle," and Lopez drove a Chrysler 300. There was evidence that on the night of June 8, 2008, Ayala was shot as she rode in the backseat of a Chrysler 300. When Lopez was later questioned about the June 8 shooting, he told investigators that he "knew what [they were] talking about" and led them to a firearm wrapped in newspaper and concealed under his home. There was evidence that a cartridge found at the scene of the June 8 shooting was discharged from the firearm located under Lopez's home.

Lopez relies on *Tippett v. State*, to support his argument that the evidence is insufficient to support his conviction. 41 S.W.3d 316, 324 (Tex. App.–Fort Worth 2001, no pet.), *disapproved of on other grounds by Hooper v. State*, 214 S.W.3d 9, 15 (Tex.

9

Crim. App. 2007). In *Tippett*, the evidence was insufficient to support a capital murder conviction under both sections 7.02(a)(2) and 7.02(b) where the evidence established that the appellant and the alleged co-conspirator agreed only to rob the victim and there was no evidence that the appellant knew that the alleged co-conspirator had a gun in his possession during the commission of the underlying robbery. *Id.* at 324-25. The present case is distinguishable because the evidence showed that Lopez asked two unnamed individuals to commit robbery and provided them with a gun with the intent that the gun be used in the commission of the offense. A jury may infer intent to kill from the use of a deadly weapon. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993) (holding that if a deadly weapon is used in a deadly manner, the inference is almost conclusive that the defendant intended to kill); *Vega v. State*, 198 S.W.3d 819, 825 (Tex. App.–Corpus Christi 2006), *vacated on other grounds*, 267 S.W.3d 912 (Tex. Crim. App. 2008). Thus, the jury could have reasonably inferred that Lopez intended to promote or assist in murder when he provided two unnamed individuals with a firearm and instructed them to "[t]o steal some rims" for "a vehicle"; s*ee Vega*, 198 S.W.3d at 825, and the evidence was sufficient to support Lopez's conviction under section 7.02(a)(2). S*ee* TEX. PENAL CODE ANN. § 7.02(a)(2). Viewing all of the evidence in the light most favorable to the prosecution, we conclude that a rational juror could have found beyond a reasonable doubt that Lopez was guilty of capital murder. *See Jackson*, 443 U.S. at 319; *Brooks*, 2010 WL 3894613, at *5. Accordingly, we overrule Lopez's first and second issues.

### III. CHARGE ERROR

By his third, fourth, and fifth issues, Lopez complains of charge error. When we review a jury charge, we must first determine whether error exists. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If we find error, we apply the appropriate harm analysis depending on whether the error was preserved in the trial court. *See Jennings v. State*, 302 S.W.3d 306, 311 (Tex. Crim. App. 2010) (stating that all jury-charge errors are cognizable on appeal, but unobjected-to error is reviewed for "egregious harm," while objected-to error is reviewed for "some harm"); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

## A.  Failure to Apply Texas Penal Code Section 7.02(b)

By his third issue, Lopez contends that the trial court erred by failing to apply the theory of criminal liability found in Texas Penal Code section 7.02(b). *See* TEX. PENAL CODE ANN. § 7.02(b). The State concedes that the trial court erred by failing to include section 7.02(b) in the application paragraph of the charge, even though Lopez Failed to object to the error at trial. Nevertheless, because he did not object to the omission of section 7.02(b) at trial, Lopez now asserts that he was egregiously harmed by the trial court's error. *See Almanza*, 686 S.W.2d at 171. Egregious harm will be found only if the error deprived the defendant of a fair and impartial trial. *Ex parte Smith*, 309 S.W.3d 53, 63 (Tex. Crim. App. 2010) (citing *Almanza*, 686 S.W.2d at 171).

"The application paragraph of a jury charge is that which authorizes conviction, and an abstract charge on a theory of law which is not applied to the facts is insufficient to bring that theory before the jury." *Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995) (citing *Jones v. State*, 815 S.W.2d 667, 669 (Tex. Crim. App. 1991)). Thus, because the jury charge did not apply Texas Penal Code section 7.02(b) to the

11

facts of the present case, section 7.02(a)(2) was the only theory of criminal responsibility for another's conduct that was properly before the jury. *See id.* We have already held that the evidence is sufficient to support Lopez's conviction pursuant to section 7.02(a)(2); thus, we cannot conclude that Lopez was egregiously harmed by the trial court's failure to place section 7.02(b)—an alternative theory of liability—properly before the jury. *See Greene v. State*, 240 S.W.3d 7, 15-16 (Tex. App.–Austin 2007, pet. ref'd). We overrule Lopez's third issue.

**B.      Comment on the Weight of the Evidence**

By his fourth issue, Lopez contends that the trial court "committed reversible error by including an unsubstantiated and prejudicial comment on the weight of the evidence" in the jury charge "by simply denominating, or characterizing, two unnamed persons as conspirators." Specifically, Lopez complains of the following language:

> If you find from the evidence beyond a reasonable doubt that on or about JUNE 8, 2008, in  Hidalgo County, Texas, JOHN DOE 1 and JOHN DOE 2 *(hereinafter referred to as Conspirators)* . . . .

(Emphasis added.) The charge then authorized the jury to find Lopez guilty of capital murder if it found that he "acted with intent to promote or assist the commission of the offense by conspirators by encouraging, directing, aiding or attempting to aid conspirators to commit the offense of robbery which resulted in the death of Elena Ayala . . . ." At trial, Lopez did not object to the inclusion of the above language as a comment on the weight of the evidence; therefore, we must determine whether the charge was erroneous and, if so, whether that error caused egregious harm. *See Jennings*, 302 S.W.3d at 311; *Almanza*, 686 S.W.2d at 171.

A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007) (providing that a trial court shall deliver to the jury "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury"). Lopez asserts that the charge was erroneous because it authorized the jury "to assess Appellant's criminal culpability as a party and/or a conspirator with two persons who—if the instruction in that regard were to be followed . . . —were conspirators."

Assuming, without deciding, that referring to the unnamed individuals as "conspirators" was erroneous, such a reference did not cause Lopez egregious harm. The application paragraph authorized the jury to find Lopez guilty of capital murder if it found, beyond a reasonable doubt, that Lopez: (1) acted with intent to promote or assist the commission of the offense; and (2) encouraged, directed, aided or attempted to aid in the commission of the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2). Thus, the usage of the term "conspirators" to refer to the two unnamed individuals does not necessarily implicate Lopez as a conspirator. Even if the jury believed that the two unnamed individuals were "conspirators," in order to find Lopez guilty, the jury, nevertheless, had to find that the elements of section 7.02(a)(2) were proven beyond a reasonable doubt. *See id.* Under the facts of the present case, there is no indication that the trial court's error, if any, in referring to the unnamed individuals as

13

"conspirators" caused Lopez egregious harm. *See Almanza*, 686 S.W.2d at 171. We overrule Lopez's fourth issue.

## C.    Lesser-Included Offenses

By his fifth issue, Lopez asserts that the trial court reversibly erred in overruling his objection to the jury charge's inclusion of murder, aggravated robbery, and robbery as lesser-included offenses.[3] The State asserts that, under the facts of the present case, neither robbery nor aggravated robbery constitutes a lesser-included offense. However, even assuming, without deciding, that the trial court erred by including these offenses in the jury charge, we would not conclude that such error amounts to reversible error because Lopez was not harmed. *See id.*

Texas law generally presumes that the jury follows the trial court's instructions in the manner presented. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (citing *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996); *Waldo v. State*, 746 S.W.2d 750, 753 (Tex. Crim. App. 1988); *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987)). The jury charge instructed the jury to determine whether the evidence proved beyond a reasonable doubt that Lopez was guilty of capital murder before considering whether he was guilty of any of the lesser-included offenses included in the charge. Because the jury found Lopez guilty of capital murder, we presume that it did not consider the other offenses. *See id.* Thus, the trial court's error, if any, in the inclusion of the offenses of murder, aggravated robbery, and robbery in the jury charge did not harm Lopez. *See Almanza*, 686 S.W.2d at 171. We overrule Lopez's fifth issue.

### IV. EVIDENTIARY RULINGS

---

[3] The alleged lesser-included offenses were included in the jury charge at the State's request.

14

In his sixth, seventh, and eighth issues, Lopez urges that the trial court abused its discretion by allowing the admission of certain evidence. We review a trial court's evidentiary rulings under an abuse-of-discretion standard. *Klein v. State*, 273 S.W.2d 297, 304-05 (Tex. Crim. App. 2008). To constitute an abuse of discretion, the trial court's decision must fall outside the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

## A. "Investigator Exception"

By his sixth issue, Lopez asserts that the trial court abused its discretion by crafting an "investigator exception" to the hearsay rules, "which permitted [Investigators Tanguma and Cantu, as well as Deputy Salvador Arguello (herein collectively referred to as "the investigators")] to tell jurors what they heard from other testifying and non-testifying sources." Additionally, Lopez complains that the trial court's admission of the investigators' testimony violates the Confrontation Clause.[4]  *See Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

### 1. Disputed Testimony

Specifically, Lopez complains of the admission of Deputy Arguello's testimony, which follows in pertinent part:

[The State]:  On August 18th, 2008, did you receive any information that was relevant to this investigation?

[Deputy Arguello]:  Yes.

---

[4] The State urges that Lopez's sixth issue is multifarious and therefore presents nothing for review. *See Taylor v. State*, 190 S.W.3d 758, 764 (Tex. App.–Corpus Christi 2006), *rev'd on other grounds*, 233 S.W.3d 356 (Tex. Crim. App. 2007). Out of an abundance of caution, and because we may elect to consider multifarious issues if we are able to determine, with reasonable certainty, the alleged error about which the complaint is made, we elect to address Lopez's sixth issue. *See Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd); *see also Dilworth v. State*, No. 13-07-00520-CR, 2008 WL 5732155, at *3 n.3 (Tex. App.–Corpus Christi Dec. 4, 2008, pet. ref'd) (mem. op., not designated for publication).

| | |
|---|---|
| [The State]: | Okay. Did that information that you received indicate a potential suspect for this crime? |
| [Deputy Arguello]: | Yes. |
| [The State]: | Did you pass that information on to the investigating officers? |
| [Deputy Arguello]: | Yes. |
| [The State]: | All right. Who was the potential witness that was identified? |
| [Defense Counsel]: | Your Honor, again, my objection is as to hearsay. This is back door hearsay. This witness's investigative techniques have not been challenged, and I believe— |
| The Court: | The objection is overruled. |
| [The State]: | Deputy, did that information provide you with a name for a potential suspect? |
| [Deputy Arguello]: | Yes. |
| [The State]: | All right. Who was that person? |
| [Deputy Arguello]: | Ricardo, Ricardo Lopez. |

Lopez also complains of the admission of the following testimony provided by Investigator Tanguma:

| | |
|---|---|
| [The State]: | Now, sir, at this point did you have information which—or let me put it this way: Did you obtain information which led you to believe that Ricardo Lopez was involved in this actual case—the murder? |
| [Defense Counsel]: | Objection, Your Honor. It calls for hearsay. It is backdoor hearsay, that was previously stated. |
| The Court: | Overruled. |
| [The State]: | You may answer, sir. |

16

[Investigator Tanguma]:     Yes, I did.

        . . . .

[The State]:     Do you know what type of vehicle Mr. Lopez wanted the rims for?

[Investigator Tanguma]:     Yes, He's—

[Defense Counsel]:     Objection, Your Honor.  It calls for hearsay.

        . . . .

The Court:     The objection is overruled.

[Investigator Tanguma]:     Yes, for a Chrysler 300.

Lopez also complains of the following exchange during Investigator Cantu's testimony:

[The State]:     How was it that Mr. Gutierrez's information and statement helped you in the investigation, sir?

[Investigator Cantu]:     Through the interview with Mr. Gutierrez, it was learned—

[Defense Counsel]:     Again, Your Honor, the objection as to hearsay.

The Court:     The objection is overruled.

[The State]:     You may answer.

[Investigator Cantu]:     Through the interview with Mr. Gutierrez, it was learned that he had been a friend of the defendant for sometime [sic].  The defendant had confided in him—that he had provided a weapon that was used to go steal some rims for his vehicle, which was a 300 Chrysler, identical—or similar to the one that the deceased was riding in.  It was learned that he was feeling bad about providing that weapon, and he had knowledge that the weapon that he provided these individuals to steal these rims

17

had been used to shoot and kill this victim—the deceased.

**2. Preservation of Error**

To preserve an issue for appellate review, a party must make a timely objection or request to the trial court, sufficiently stating the specific grounds for the requested ruling, unless apparent from the context, and obtain an adverse ruling. *See* TEX. R. APP. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Trevino v. State*, 174 S.W.3d 925, 927 (Tex. App.–Corpus Christi 2005, pet. ref'd). Moreover, the objection or request at trial must comport with the complaint presented on appeal. *Wilson*, 71 S.W.3d at 349. Even constitutional errors may be forfeited by failure to object at trial. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Trevino*, 174 S.W.3d 927.

A review of the record demonstrates that Lopez objected to the disputed portions of the investigators' testimonies on hearsay grounds. A party's hearsay objection does not preserve error on a Confrontation Clause ground. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005); *see also Nolen v. State*, No. 13-08-00526-CR, 2009 WL 4051980, at *4 (Tex. App.–Corpus Christi Nov. 24, 2009, pet. ref'd) (mem. op. on reh'g, not designated for publication). Accordingly, in reviewing Lopez's sixth issue, we will only consider his hearsay arguments, as his Confrontation Clause arguments were not preserved. *See Reyna*, 168 S.W.3d at 179; *see also Nolen*, 2009 WL 4051980, at *4.

**3. Analysis**

Hearsay is a statement, other than one made by the declarant while testifying at the trial, which is offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d).

18

Nevertheless, "[p]olice officers may testify to explain how the investigation began and how the defendant became a suspect." *Lee v. State*, 29 S.W.3d 570, 577-78 (Tex. App.–Dallas 2000, no pet.) (citing *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App.1995); *Short v. State*, 995 S.W.2d 948, 954 (Tex. App.–Fort Worth 1999, pet. ref'd); *Thornton v. State*, 994 S.W.2d 845, 854 (Tex. App.–Fort Worth 1999, pet. ref'd)); *see also Samora v. State*, No. 13-09-00587-CR, 2010 WL 3279536, at *7 (Tex. App.–Corpus Christi Aug. 19, 2010, no pet.) (mem. op., not designated for publication). "An officer's testimony is not hearsay when it is admitted, not for the truth, but to establish the course of events and circumstances leading to the arrest." *Thornton*, 994 S.W.2d at 854. The critical question is whether there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom. *See Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989).

The State's questions to the investigators were not designed to elicit hearsay testimony; instead the questions allowed the investigators to comment on their investigations and how Lopez became a suspect. *See Dinkins*, 894 S.W.2d at 347; *Lee*, 29 S.W.3d at 577-78. Accordingly, the trial court did not abuse its discretion in overruling Lopez's hearsay objections. Moreover, even if the complained-of portions of the investigator's testimonies had been hearsay, any error in admitting them was harmless because the testimonies were cumulative of Gutierrez's testimony. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (providing that "any error in admitting [hearsay] evidence was harmless in light of other properly admitted evidence proving the same fact"). We overrule Lopez's sixth issue.

**B.      Ultimate Issue of Fact**

In his seventh issue, Lopez asserts that "the trial court abused its discretion in allowing . . . [Investigator] Cantu to testify about an ultimate issue of fact for the jury." During the State's direct examination of Investigator Cantu, the State asked whether he was able to "determine why this murder took place." Lopez objected on the grounds that the question "invad[es] the province of the jury" and "calls for an ultimate conclusion of facts." The trial court overruled the objections, and Investigator Cantu testified:

> Through the investigation after reviewing the case itself, it was learned that the defendant was attempting to get some rims for his vehicle. He had provided a weapon to two unidentified individuals at this time who in turn went out to get those rims for him. That weapon that he provided was located at this residence, and was used—and was used to shoot—and was the weapon that killed the victim.

"The doctrine which prohibited testimony that would invade the province of the jury 'is and has been long dead' as a proposition of law." *Mays v. State*, 563 S.W.2d 260, 263 (Tex. Crim. App. 1978) (quoting *Boyde v. State*, 513 S.W.3d 588, 590 (Tex. Crim. App. 1974) (citing *Hopkins v. State*, 480 S.W.2d 212, 220 (Tex. Crim. App. 1972))). However, "[t]he repudiation of the 'invasion of the province of the jury' rule does not mean that an expert or non-expert witness may freely state his opinion in regard to any fact in issue." *Hopkins*, 480 S.W.2d at 220. Lopez asserts that the trial court abused its discretion by overruling his objection and allowing Investigator Cantu "to testify about an ultimate issue of fact for the jury (which was an opinion as to why [the Diaz's] car was stopped)." We disagree.

Motive is not a required element in a criminal case. *Bush v. State*, 628 S.W.2d 441, 444 (Tex. Crim. App. 1982). And although "evidence of motive is one kind of evidence [that aids in] establishing proof of an alleged offense," *see Crane v. State*, 786 S.W.2d 338, 349-50 (Tex. Crim. App. 1990), the evidence of motive within the

20

complained-of statement is cumulative of evidence presented in the testimonies of Gutierrez, Ranger Matthews, and Investigator Tanguma. Thus, error, if any, by the trial court in allowing the admission of Investigator Cantu's testimony is harmless. *See Brooks*, 990 S.W.2d at 287. Lopez's seventh issue is overruled.

## C. Bolstering

By his eighth issue, Lopez contends that the trial court "abused its discretion in allowing the State . . . to bolster [Investigator] Tanguma's testimony by inquiring whether he would lose his peace officer's license if he were to testify falsely." During the State's questioning of Investigator Tanguma, the following exchange occurred:

| [State]: | Investigator Tanguma[,] as a law enforcement [sic] and an investigator with experience, do you know that there is a penalty for perjury, correct [sic]? |
|---|---|
| [Investigator Tanguma]: | Yes, I do. |
| [Defense Counsel]: | Objection, Your Honor. Again, bolstering the witness. |
| The Court: | The objection is overruled. |
| [State]: | You may answer, sir. |
| [Investigator Tanguma]: | Yes, ma'am. |
| [State]: | If you were to commit perjury on the stand, would you lose your license as a peace officer? |
| [Investigator Tanguma]: | Oh, yes, I would. |
| [State]: | Thank you, sir. I'll pass the witness. |

Lopez lodged an objection to the State's question on whether there was a penalty for perjury. However, he did not object to the question of which he now complains—whether Investigator Tanguma would lose his peace officer's license if he

21

were to testify falsely. Thus, Lopez failed to preserve this complaint. *See* TEX. R. APP. P. 33.1(a). Even if we were to conclude that Lopez's objection to the State's first question preserved a complaint as to the second question, Lopez fails to cite any authority or advance any argument to support his contention that the trial court erred by overruling his objection. As such, this issue is inadequately briefed. *See* TEX. R. APP. P. 38.1(i) (providing that "the brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). We overrule Lopez's eighth issue.

## V. CONCLUSION

Having overruled all of Lopez's issues on appeal, we affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
30th day of December, 2010.