

# NUMBER 13-22-00478-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TROY GILBERT DEESE
A/K/A TROY DEESE,                                    Appellant,

v.

THE STATE OF TEXAS,                                  Appellee.

## ON APPEAL FROM THE 198TH DISTRICT COURT
## OF KERR COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Silva**
**Memorandum Opinion by Justice Benavides**

Appellant Troy Gilbert Deese a/k/a Troy Deese was convicted of two counts of sexual assault of a child, a first-degree felony, and sentenced to fifty years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.011(a)(2). By three issues that we have reorganized, Deese argues that: (1) the evidence was insufficient to support the jury's verdict; (2) the

jury charge impermissibly instructed the jury that an offense occurred; and (3) the trial court erred by speaking with jurors during their deliberations. We affirm.

## I. BACKGROUND[1]

On May 26, 2020, Deese was indicted on five counts of sexual assault of a child. In summary, the counts alleged as follows:

- Count One: On or about October 15, 2019, Deese penetrated the vagina of Ivy,[2] a child younger than seventeen, with his finger.

- Count Two: On or about October 15, 2019, Deese penetrated the mouth of Ivy, a child younger than seventeen, with his penis.

- Count Three: On or about November 15, 2019, Deese penetrated the sexual organ of Ivy, a child younger than seventeen, with his penis.

- Count Four: On or about November 30, 2019, Deese penetrated the vagina of Ivy, a child younger than seventeen, with his penis; and

- Count Five: On or about December 15, 2019, Deese penetrated the vagina of Ivy, a child younger than seventeen, with his penis.

Trial commenced on May 3, 2022. Ed Holloway, a sergeant with the Kerrville Police Department, sponsored the admission of footage obtained from his body-worn camera. The footage depicts a conversation between Sergeant Holloway and Deese about Deese's familiarity with Ivy. According to Deese, Ivy visited his home when she was on "dope." In the video, Deese shows Sergeant Holloway what he refers to as a "dildo" and

---

[1] This appeal was transferred to this Court from the Fourth Court of Appeals in San Antonio by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2] To protect the complainant's identity, we identify her by a pseudonym. *See* TEX. CONST. art. 1, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"); TEX. R. APP. P. 9.8 cmt. ("The rule does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases.").

2

explains that Ivy used it on herself while she was on Deese's couch. Deese told Sergeant Holloway that Ivy was "trying to get [him] to fuck her" and that Ivy lied about her age, but Deese "knew she was lying." Deese denied ever having sex with Ivy.

Sergeant Holloway testified that Deese confided in him that he had open heart surgery and suffered from erectile dysfunction as a result. However, Deese also told Sergeant Holloway that he "had a foursome" after having open heart surgery, and "he was going so hard that his heart rate started to go up and the [heart] monitor started to go off."

Sergeant Holloway also testified that, after obtaining a search warrant to search the contents of Deese's phone, he discovered that the "phone was pretty much wiped clean." Sergeant Holloway explained that he attempted to uncover communications between Ivy and Deese on Ivy's phone, but Ivy was unable to login to the app that she reportedly used to communicate with Deese.

On direct examination by the State, Ivy testified that she was separated from her mother and became addicted to methamphetamine when she was about fifteen years old. In June of 2019, when Ivy was sixteen years old and Deese was fifty-seven years old, she met Deese at a local "[p]ub" where the two exchanged phone numbers. Ivy testified that after this, she "kind of fell off and [she] was gone [from Kerrville] for 45 days." Ivy explained that she was sober during this time. She returned to Kerrville in "Octoberish" of 2019. Ivy testified that she ran into Deese and the two chatted a bit before Deese stated, "Well, . . . you still look good."

In October of 2019, she visited Deese's apartment. Ivy stated, "It was pretty dark

3

in the living room, so I just followed him to the bedroom, and then I ended up sitting down on the bed and he started, like, groping himself, and then it proceeded to me giving him oral." Ivy clarified this meant that Deese inserted his penis into her mouth. Ivy stated that Deese also penetrated her vagina with his fingers during this incident. Afterwards, Deese briefly left the room, "and he came back and he handed [Ivy] a sack of methamphetamine." Ivy admitted that she later used the methamphetamine Deese provided.

Ivy also testified that on "[a] minimum of three" occasions prior to her seventeenth birthday, Deese used his penis to penetrate her vagina. Ivy testified that her seventeenth birthday was in December of 2019, and that she and Deese continued to have sex after she turned seventeen.[3]

On cross-examination, Ivy testified that she permanently moved back to Kerrville prior to October of 2019, and worked for "[l]ess than 30 days" at Burger King. After this, she moved to Houston for some unknown period of time and then "went to stay with [her] uncle, who lives in Austin" in September 2019. Ivy testified she did not stay with her uncle for "very long" before she moved into a stranger's home in Austin for "a good month." Ivy explained that she then was arrested at the "end of September" for criminal trespass. Ivy conceded that her "time range might not be correct, because [she] was strung out on drugs" during this period. The State rested after Ivy's testimony.

---

[3] Ivy testified to the exact date she turned seventeen. However, for the sake of Ivy's privacy, and because the parties are familiar with the date, we omit it from our recitation of the background facts in this memorandum opinion. *See* TEX. R. APP. P. 9.10(a)(3) (providing that sensitive data, which must be redacted from court filings, includes "a birth date . . . of any person who was a minor at the time the offense was committed").

Two witnesses testified during Deese's case-in-chief: (1) Patricia Dickerson, who testified that she "grew up in the same community" as Deese and knew him her "entire life," and (2) Renee Shaw, Deese's cousin. Dickerson testified that she was familiar with Ivy and Ivy's mother. According to Dickerson, there were allegations of sexual abuse surrounding three adult men and Ivy. Dickerson testified that she witnessed a fight between Ivy's mother and Darrell Frazier, one of the men accused of sexually abusing Ivy. Dickerson testified that Deese was also present during this fight but that Ivy's mother solely confronted Frazier about the abuse.

Shaw, Deese's cousin, disputed that these incidents could have occurred in the fall of 2019. According to Shaw, Deese "had open heart surgery" and subsequently suffered from "[e]rectile dysfunction." Shaw testified that her own father suffered two heart attacks around October 31, 2019. According to Shaw, Deese called 9-1-1 and stayed with her father in the hospital for two days. Then, Shaw's father was transferred to a hospital in San Antonio. Shaw, Deese, and a few other individuals stayed with Shaw's father in San Antonio until November 19. After this, Deese reportedly helped Shaw's father with various tasks around the home.

Shaw also testified that Deese had people visiting his home "all the time" and that he would give people the key to his home. Shaw explained that Deese's son and a woman named Mandy were living in Deese's home around the time these offenses were alleged to have occurred. Shaw testified that Deese had a good job and spent a lot of money, but in truth, he was not wealthy. She surmised that Deese's appearance of wealth may have been a motivating factor for these allegations. Shaw stated that she loved and supported

Deese and did not believe the allegations in this case.

After the jury retired to deliberate, the following colloquy occurred:

THE COURT: It's approximately 6:15. We received another question from the jury, and it is, quote, "I need to speak to the Judge," signed by the Presiding Juror. Bring her in here and put her on the record. That's all I know to do.

[Defense counsel]: I think that she can't talk to you. I mean, I would say, "You have all the facts and the evidence and continue to deliberate. I don't know how she can talk to you."

THE COURT: What if we sent a response back that said, "What is the purpose of the request," because it could be anything from—

[Defense counsel]: Like a medical emergency or something like that.

THE COURT: Could be a medical issue. It could be somebody—

[Defense counsel]: Kid or—

THE COURT: Yeah, or somebody is refusing to follow the Charge Of The Court or somebody is doing internet research. It could be any one of a number of things. I hate to just pull her off.

[Defense counsel]: Okay. Well, maybe not send a note. I guess I wouldn't have an objection to bringing her out to put her on the record to say, "What is the nature of your request?" And if it's anything other than something like that, I just don't see how the Court can communicate with her.

THE COURT: I agree.

. . . .

THE COURT: We have to do this on the record, because technically none of us are supposed to communicate with y'all while you are deliberating.

[Juror 1]: I understand.

6

THE COURT: I need to ask a real specific question, and depending on your answer will determine how we proceed.

[Juror 1]: Okay.

THE COURT: What is the nature of the issue that you need to talk to the Court about?

[Juror 1]: I don't know how to answer the nature. It's regarding a jury—a juror in our room from the first statement made when we entered the jury room.

THE COURT: Somebody that's allegedly not following the Charge Of The Court?

[Juror 1]: Didn't follow the charge from the beginning, self-stated.

THE COURT: Which juror is it?

[Juror 1]: I don't know his name.

THE COURT: Okay. Will you do me a favor and go with the bailiff back to the jury room, identify the person, and if you would, bring them out here, and if you don't mind coming back out with him, okay.

(Pause off the record)

[Juror 2]: Hello, Your Honor.

THE COURT: Hi.

[Juror 2]: We just have a misunderstanding.

THE COURT: Hang on real quick. We have to do this very formally and specifically, because we are not supposed to be interfering with your deliberations, okay?

. . . .

[Juror 2], you're one of the jurors, correct?

[Juror 2]: Yes, sir.

7

THE COURT: And can you tell the Court what the issue is?

[Juror 2]: Well, I came in and I—do I discuss this freely with all of y'all? I couldn't in good conscious [sic]—I didn't think the State proved [its] case, and she countered and there were several issues.

THE COURT: Hang on. Don't tell us about deliberations.

[Juror 2]: What do you want to know?

THE COURT: Because deliberations are where you're going back there. You consider all the evidence, and then each of you has to vote your conscience.

[Juror 2]: Right.

THE COURT: So procedurally, is there an issue with following the Charge Of The Court that you got?

[Juror 2]: What do you mean by "procedurally," sir?

THE COURT: Why don't you elaborate on what you perceive the issue to be.

[Juror 1]: In the instructions you gave us, it states very clearly what we are looking at to charge—to vote for a guilty or not guilty against a charge, and from the moment he sat down, he was the first one to speak. He said his verdict, and then he started in about there is no way that he believes she is a child in today's world. She had had sex. She had kids. She is a drug addict, everything about the—what is—

THE COURT: The victim.

[Juror 1]: The victim. And so I immediately said we need to take a vote first and then we can talk about what our issues are. In the entire time we have been in that room, his response to all of us has continued to be he does not consider her a child. He said it multiple ways.

[Juror 2]: Five other people feel the same way I do.

8

[Juror 1]: No, none of them said that. We're not talking about the verdict.

[Juror 2]: Ma'am.

THE COURT: Hang on. Hang on. Stop. Here is the issue. The Court provided a charge. Very specifically—

[Juror 2]: Yes, sir.

THE COURT: Before I stick my foot in my mouth, it contains the definition of a child on page 1.

[Juror 2]: Right.

THE COURT: That is the definition that you are bound by, because—

[Juror 2]: Yes, sir. And I understand that, and I acknowledged that to her.

THE COURT: Okay. That's all I can do is tell you to follow the Charge Of The Court.

[Juror 2]: Yes, sir. Yes, sir.

[Juror 1]: Everything he said in that room contradicts what he is saying.

[Juror 2]: That's not true.

[Juror 1]: He has argued the entire time she is not a child.

THE COURT: Why don't y'all step back in the jury room.

[Juror 2]: And five other people.

THE COURT: Hang on. Y'all step back into the jury room, work through the charge as it exists, then if you have an issue, we will go from there.

[Juror 2]: Okay.

THE COURT: Okay.

9

[Juror 2]:          Please. I understand.

The jurors resumed their deliberations. At 7:10 p.m., the jury sent another communication to the trial court, querying:

1.    Can reduced charges be considered at this time–i.e., a) to indecency with a child or b) child voyeurism[?]

2.    We have voted five times and we cannot agree[.]

The trial court responded in writing at 7:30 p.m., stating:

1.    Please by guided by the charge[.]

2.    Please see the *Allen* charge.

(Italics added). Accompanying the trial court's written communication was an *Allen* charge, encouraging the jurors to reach a unanimous verdict if possible. *See Allen v. United States*, 164 U.S. 492, 501 (1896).

At 7:50 p.m., the jury returned to the courtroom and rendered its guilty verdicts on Counts One and Two and its not guilty verdicts on Counts Three through Five. The trial court sentenced Deese as described above. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first issue, Deese contends that the evidence was insufficient to support the jury's convictions because Ivy's timeline of events was internally inconsistent.

### A.    Standard of Review & Applicable Law

"The legal-sufficiency appellate standard of evidentiary review requires the reviewing court to view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Klein v. State*, 273 S.W.3d 297, 302 (Tex. Crim.

10

App. 2008). "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial." *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020).

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Id.* at 856 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (citing *Malik*, 953 S.W.2d at 240). "The law 'authorized by the indictment' consists of the statutory elements of the offense as modified by the indictment allegations." *Id.*

## B.    Analysis

Counts One and Two as set out in the indictment provided that Deese committed sexual assault of a child by penetrating Ivy's vagina and mouth with his finger and penis, respectively. In the jury charge, however, Counts One and Two allowed the jury to convict Deese for sexual assault of a child if it found beyond a reasonable doubt that he penetrated Ivy's vagina with his finger and penis, respectively. We measure the sufficiency of the evidence by the *hypothetically correct* jury charge, not the jury charge that was *actually provided*. *Swartz v. State*, 61 S.W.3d 781, 785 (Tex. App.—Corpus Christi–Edinburg 2001, pet. ref'd). "[W]hen the controlling statute lists several alternative acts intended by the defendant and the indictment limits the State's options by alleging

11

certain of those intended acts, the hypothetically correct charge should instruct the jury that it must find one of the intended acts alleged in the indictment." *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001). This "ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *Malik*, 953 S.W.2d at 240.

Ivy testified that in October of 2019, Deese penetrated her mouth with his penis and penetrated her vagina with his fingers. This testimony alone is sufficient to support Deese's conviction for two counts of sexual assault of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a); TEX. PENAL CODE ANN. § 22.011(a)(2)(A), (B); *Cantu v. State*, 678 S.W.3d 331, 358 (Tex. App.—San Antonio 2023, no pet.). Thus, this is not a situation "in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *See Malik*, 953 S.W.2d at 240.

But even if the State was required to prove Count Two as it was described in the jury charge (i.e., that Deese penetrated Ivy's vagina—rather than her mouth—with his penis), Ivy testified that this occurred on at least three occasions prior to her seventeenth birthday. A specific date was not required for the jury to find this allegation true. *See Sledge v. State*, 953 S.W.2d 253, 256 n.8 (Tex. Crim. App. 1997); *see also Garcia v. State*, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998) ("[T]ime is not a material element of an offense (at least, not usually)."); *cf. Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd) (finding evidence of continuous sexual abuse sufficient where the complainant testified that the abuse began in the middle of sixth grade and ended when she moved out of the defendant's house).

12

Deese argues that Ivy's testimony about these incidents "became inconsequential after [Ivy] constructed a timeline with benchmarks that made this generic accusation impossible." Ivy's testimony on when certain events transpired was somewhat contradictory, but she was transparent with the jury on cross that her timeline may have been incorrect. It is the jury's province to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Ratliff v. State*, 663 S.W.3d 106, 113 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "If the record supports conflicting inferences, [we] must 'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to the jury's factual determinations." *Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023) (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). Here, the jury could have discounted the timeline Ivy provided during cross and credited the timeline she gave on direct. *See id.* Our job is to defer to this resolution. *See Ratliff*, 663 S.W.3d at 113.

We overrule Deese's first issue.

### III.     JURY CHARGE ERROR

By his second issue, Deese argues that the jury instruction that an offense occurred on or about a certain date constituted harmful error.

### A.     Standard of Review & Applicable Law

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). But when, as here, no objection is made to the alleged error in the jury charge, reversal is not required unless the error resulted in egregious harm. *Alcoser v. State*, 663

S.W.3d 160, 165 (Tex. Crim. App. 2022). "Harm is assessed 'in light of the entire jury charge, the state of the evidence, including the contested issues and weight of [the] probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.'" *Id.* (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). "An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory." *Id.* "Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one." *Id.*

**B.  Analysis**

The instruction at issue provided:

> You are further instructed that in Count [One] that the offense was committed on or about October 15, 2019. The state is not required to prove that the alleged offense happened on that exact date. It is sufficient if the state proves that the offense was committed before May 26, 2020, the date the indictment was filed.

Deese contends that this charge is erroneous because: (1) it instructed the jury that an offense occurred, rather than permitting the jury to determine that issue for itself; and (2) it permitted the jury to convict Deese for incidents that happened after Ivy's seventeenth birthday, as May 26, 2020, the date Deese was indicted, was after that date. We will assume without deciding that this instruction was erroneous. Because Deese did not object to the instruction, we analyze the entire record for egregious harm. *See Alcoser*, 663 S.W.3d at 165.

**1.  The Entire Jury Charge**

"As to this factor, we consider the entire jury charge to determine if 'anything in the

14

balance of the jury charge either exacerbated or ameliorated' the complained of error." *State v. Lausch*, 651 S.W.3d 546, 556 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd) (quoting *French v. State*, 563 S.W.3d 228, 236 (Tex. Crim. App. 2018)). Although the first sentence of the contested paragraph stated that "the offense was committed," the surrounding sentences did not treat the commission of the offense as a foregone conclusion. For instance, the second sentence provided that "[t]he state is not required to prove that the alleged offense happened on that exact date." In other words, the charge still placed the burden to prove an offense occurred on the State.

The jury charge also instructed that the jury could only find Deese guilty of the charged offenses if it found from the evidence beyond a reasonable doubt that he sexually assaulted Ivy, "a child who was then and there younger than 17 years of age." The charge further defined a child as "a person younger than 17 years of age." Thus, any error in instructing the jury that "it is sufficient" for the State to show the offenses occurred prior to May 26, 2020, was ameliorated by this language. *See Lausch*, 651 S.W.3d at 556.

Additionally, the same relevant language that appeared in the instruction for Count One—i.e., "[y]ou are further instructed . . . that the offense was committed on or about [a certain date]" and "[i]t is sufficient if the state proves that the offense was committed before May 26, 2020, the date the indictment was filed"—was included in the charge for all five counts. Yet, the jury nonetheless acquitted Deese on Counts Three, Four, and Five. It is improbable that the jury only felt empowered to reach a guilty verdict on Counts One and Two because of this language but then chose to ignore the same language when considering Counts Three, Four, and Five. If the jury charge error requires "mental

15

gymnastics" to rationalize the jury's verdict, it is likely the charge error merely resulted in theoretical harm, rather than actual harm. *See Reed v. State*, 680 S.W.3d 620, 627 (Tex. Crim. App. 2023).

Regardless, the charge was otherwise appropriate. For instance, it instructed the jury that it could only convict if it found "from the evidence beyond a reasonable doubt that" the charged offenses occurred. The charge also specified that the jurors were "the exclusive judges of the facts" and that the written instructions solely provided "the law" governing the case. We conclude that "while this factor weighs in favor of a finding of some theoretical harm, it does not weigh in favor of egregious harm." *See id.*

### 2. The State of the Evidence

Like most cases of this nature, the verdict ultimately relied on competing credibility determinations. However, "the mere existence of conflicting testimony surrounding a contested issue does not necessarily trigger a finding of egregious harm." *Villarreal v. State*, 453 S.W.3d 429, 436 (Tex. Crim. App. 2015). Ivy testified about two specific acts of sexual abuse that occurred in October of 2019, and she testified in general terms about three additional sexual assaults that occurred prior to her seventeenth birthday. She also testified that she and Deese had sex after her seventeenth birthday. Deese told Sergeant Holloway that Ivy had visited his apartment when she was underage, and she expressed a desire to have sex with him. However, he denied engaging in *any* sexual activity with Ivy, not just sexual activity occurring before her seventeenth birthday.

The conflicts between Ivy's version of events and Deese's version of events gave the jury the discretion to convict him of all, some, or none of the offenses. But if the charge

at issue played a significant role in the jury's deliberations, it stands to reason that the jury would have convicted him of all five counts. Deese suggests the verdicts were a by-product of Ivy's credibility, arguing, "That the complainant lacked credibility is not only a well-founded opinion, but it was also implicit in the finding of the jury when it acquitted [Deese] on three of the five accusations she lodged against him." But had the jury believed Deese instead of Ivy, "it would have acquitted him of all charges." *See Arrington v. State*, 451 S.W.3d 834, 842 (Tex. Crim. App. 2015). By convicting Deese of two of the five counts, the jury clearly found Ivy's version of events more credible than Deese's. *See id.* The entirety of the evidence weighs against a finding of egregious harm. *See id.*

### 3. Argument

In closing, the State's attorney brought the jury's attention to the page on which this instruction appeared and stated, "This is an important page. I'm not required by law to prove the specific date. It's on or about." *See Sledge*, 953 S.W.2d at 256 ("It is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period."). The State also argued, "[Deese's] penis penetrated [Ivy's] vagina three different times prior to . . . her birthday. That is the timeline here. It's not years. We are talking October to just before her birthday . . . ."

Defense counsel argued,

[Ivy] could not, under any questioning that wasn't being fed to her, tell you any time, any period of time that her allegations stood up as truth, and so the State of Texas has to say to you, "Please, please, please. We know that you probably don't even think this happened on October 15[th] or November

17

15th or November 30th or November—December 15th. We know that you probably don't believe that beyond a reasonable doubt, so please, please, please just give us all the way until May."[4]

. . . .

If you are not at beyond a reasonable doubt, if you have a question that is based on reason, if you say to yourself, "What day? When? Which drugs? What place? Did I hear a date?" If you ask those questions, I submit to you that is reasonable doubt.

It was Deese, not the State, that suggested the jury might be able to convict if it found that sexual contact occurred after Ivy's seventeenth birthday, but before May. But neither the State nor Deese suggested to the jury that the State had no burden to prove that the offenses occurred, or that the burden had already been met. This factor weighs against a finding of egregious harm.

### 4.    Any Other Relevant Information

There is no indication in the record that the jurors inquired about this specific instruction. Deese points to the conversation the trial court had with two jurors, during which one juror revealed that he questioned whether the State had met its burden and whether Ivy was a child under that juror's understanding of the term. But this interaction demonstrates that the two jurors were aware that they had to find Ivy to be a child to find Deese guilty. And the trial court ultimately referred the jurors to the definition of child in the charge, not to this contested paragraph.

Because there is no other relevant information in the record that shows the jury's verdict was improperly influenced by this paragraph, we conclude that the fourth factor

---

[4] The State objected to this, stating, "Objection, Your Honor. That's not what the instructions are." The trial court overruled this objection.

does not weigh in favor of finding that Deese suffered egregious harm. *See Arevalo v. State*, 675 S.W.3d 833, 861 (Tex. App.—Eastland 2023, no pet.).

### 5.    Conclusion

Based on our review of the record, we conclude that the alleged jury charge error did not result in in egregious harm. We overrule Deese's second issue.

## IV.    ORAL COMMUNICATION WITH JURORS

By his final issue, Deese contends the trial court erred by speaking with jurors during their deliberations.

### A.    Applicable Law

"The deliberations of a jury are required to be kept secret, and to compel them to disclose in the presence of spectators how they stood and who are the minority might well be considered a species of pressure which in some instances might require reversal." *Alsup v. State*, 39 S.W.2d 902, 903 (Tex. Crim. App. 1931). During deliberations, the jury may communicate with the court via writing. TEX. CODE CRIM. PROC. ANN. art. 36.27 (entitled "Jury may communicate with court"). In response, "[t]he court shall answer any such communication in writing," and shall use due diligence to give the defense the opportunity to object to its answer in open court. *Id.* "The court's communication should be by written instruction in open court unless expressly waived by the Defendant." *Smith v. State*, 474 S.W.2d 486, 488 (Tex. Crim. App. 1971); *see* TEX. CODE CRIM. PROC. ANN. art. 36.27. "[O]ral instructions to the jury are not in compliance with [a]rt. 36.27, . . . but . . . failure of the defendant to object results in waiver of the error." *Edwards v. State*, 558 S.W.2d 452, 454 (Tex. Crim. App. 1977).

**B.     Analysis**

Deese contends that error was preserved. We conclude otherwise. After receiving the first note from the jurors, defense counsel and the trial court discussed what the note might be in reference to and whether the court should respond in writing or in open court. Defense counsel suggested that the note could refer to "a medical emergency or something like that." The trial court responded that it could also refer to "somebody . . . refusing to follow the Charge Of The Court or somebody . . . doing internet research." In response, defense counsel stated:

> Okay. Well, maybe not send a note. I guess I wouldn't have an objection to bringing her out to put her on the record to say, "What is the nature of your request?" And if it's anything other than *something like that*, I just don't see how the Court can communicate with her.

(Emphasis added). The trial court agreed with defense counsel.

"[S]omething like that" could refer to the trial court's specific communication with the jurors. In other words, counsel could have been saying that the trial court could only ask the jurors, "What is the nature of your request," or *something like that* question. On the other hand, "something like that" could have been a response to the exchange of topics between defense counsel and the court. In other words, defense counsel may have agreed that the trial court could communicate with the jurors if the nature of their request involved "medical emergencies," "somebody . . . refusing to follow the Charge Of The Court," or *something like that*. Therefore, defense counsel's objection could have been to the subject-matter discussed between the trial judge and the juror, or it could have been to the specific question the judge posed to the juror. Based on this ambiguity, we cannot say that counsel stated the grounds for her objection "with sufficient specificity to make

20

the trial court aware of the complaint," nor were the grounds apparent from the context. *See* Tᴇх. R. Aᴘᴘ. P. 33.1(a)(1)(A). Further, Deese at no point objected to the medium through which the trial court communicated with the jurors (i.e., orally rather than in writing).

Additionally, Deese was required to pursue his objection "to an adverse ruling" and to continue objecting each time the grounds for objection became apparent. *See Haley v. State*, 173 S.W.3d 510, 516–17 (Tex. Crim. App. 2005); *Adams v. State*, 180 S.W.3d 386, 399 n.20 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.). The trial court agreed to limit communications with the jurors to some extent, but Deese did not renew his objection at any point during the trial court's conversation with the jurors. *See Haley*, 173 S.W.3d at 516–17; *Adams*, 180 S.W.3d at 399 n.20. Even when Juror 1 left the courtroom to bring Juror 2 before the court, there is no indication that Deese made the court aware he had any issue with the trial court's actions. We conclude that any objection Deese may have had to the trial court speaking with jurors about their failure to follow the charge of the court has not been preserved for our review. *See Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

"[T]he *Almanza* standard" for analyzing harm "is inapplicable" when an appellant waives error concerning the trial court's communication with jurors. *Green v. State*, 912 S.W.2d 189, 193 (Tex. Crim. App. 1995); *see Word v. State*, 206 S.W.3d 646, 652 (Tex. Crim. App. 2006). Therefore, given our conclusion that Deese has waived any objection to the trial court's communication with the jurors about their failure to follow the charge, we overrule this issue.

21

However, embedded within this issue, Deese also argues that the trial court's reference to Ivy as a "victim" in front of the jurors was an improper comment on the weight of the evidence. "[T]he right to be tried in a proceeding devoid of improper judicial commentary is at least a category-two, waiver-only right." *Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017). "Jurors are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his view of the weight of the evidence, or the merits of the issues involved." *Lagrone v. State*, 209 S.W. 411, 615–16 (Tex. Crim. App. 1919). In light of this, the Legislature enacted article 38.05 of the code of criminal procedure which provides that "the judge shall not discuss or comment upon the weight" of the evidence, "nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." TEX. CODE CRIM. PROC. ANN. art. 38.05. We will assume without deciding that the trial court's reference to Ivy as a victim was an improper comment on the weight of the evidence.

But "[t]o constitute reversible error under article 38.05, the trial court's improper comments must be reasonably calculated to benefit the State or prejudice the defendant's rights." *Moore v. State*, 624 S.W.3d 676, 682 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). An improper comment on the weight of the evidence "is subject to a non-constitutional harm analysis." *Proenza*, 541 S.W.3d at 791; *see* TEX. R. APP. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Thomas v. State*, 505

22

S.W.3d 916, 926 (Tex. Crim. App. 2016). "[A]n error ha[s] a substantial and injurious effect or influence if it substantially swayed the jury's judgment." *Id.* We review the entire record to determine what effect, if any, the trial court's error had on the jury's verdict. *Id.*

We discussed the state of the evidence in depth above. *See Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011) (instructing reviewing courts to consider "any testimony or physical evidence admitted for the jury's consideration[ and] the nature of the evidence supporting the verdict" "[i]n assessing the likelihood that the jury's decision was improperly influenced"). Although Ivy's timeline of events was impeached, her testimony remained consistent that Deese sexually assaulted her multiple times before she turned seventeen. Deese denied engaging in any sexual contact with Ivy. "Even in cases in which credibility is paramount, Texas courts have found harmless error" when the error in question was not a significant part of the record. *See id.* at 96.

Importantly, it was members of the jury, not the trial court, that focused on Ivy's testimony. *See Lucio v. State*, 353 S.W.3d 873, 874 (Tex. Crim. App. 2011). The trial court made a single reference to Ivy as a victim in front of the jurors, and the comment was not emphasized by either party. *See Simon v. State*, 203 S.W.3d 581, 593 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Further, only two jurors heard the trial court call Ivy "[t]he victim," not the entire jury. The trial court responded to the juror's apparent inability to recall Ivy's name by referring to her as "[t]he victim," a relatively mild term in the grand scheme of things. *See Cueva v. State*, 339 S.W.3d 839, 864 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd) ("[T]he term 'victim' is relatively mild and non-prejudicial . . . ."); *see also Davis v. State*, No. 05-18-00398-CR, 2019 WL 2442883, at *2

23

(Tex. App.—Dallas June 12, 2019, no pet.) (mem. op., not designated for publication) ("[T]he word 'victim' is mild, non-prejudicial, and is commonly used at trial in a neutral manner to describe the events in question."); *Lopez v. State*, No. 04-99-00037-CV, 1999 WL 958017, at *3 (Tex. App.—San Antonio Oct. 20, 1999, pet. ref'd) (mem. op., not designated for publication) ("[A] court's reference to the complainant as 'victim' is not necessarily a comment on the weight of the evidence."); *cf. Casey v. State*, 215 S.W.3d 870, 887 (Tex. Crim. App. 2007) (concluding that "the appearance of the word 'victim' in the charge without the modifier 'alleged' [was not] a comment by the trial court which assumes the truth of a controverted issue" when the language in the charge tracked the language of the relevant statute). Indeed, during her examination of Sergeant Holloway, defense counsel referred to Ivy as "the victim" and acknowledged in her closing that "[Ivy], it sounds like, quite frankly, that that young girl has had a terrible life, and I'm sorry for that."

Deese points to the short amount of time that elapsed between the conversation with the jurors and the return of the verdict. After the trial court's conversation with the jurors, the jury continued to deliberate, and about an hour later, it sent a note to the court indicating that the jurors still could not reach a unanimous verdict. The trial court responded by issuing an *Allen* charge. The jurors then returned their verdict about twenty minutes after the *Allen* charge. The court of criminal appeals has previously held that this factor provides little, if any, insight into the effect an error may have:

> All the record indicates is that thirty minutes elapsed from the jury's note informing the judge that they wished to deliberate after the admonishment and the note stating that the jury reached a verdict. This reveals very little about whether the admonishment affected the jury's deliberations, and, if

24

so, the manner of its effect.

*Ex parte Parra*, 420 S.W.3d 821, 825 (Tex. Crim. App. 2013).

Based on our review of the record, we cannot conclude that referring to her as "[t]he victim" substantially swayed the jury's verdict. *See Thomas*, 505 S.W.3d at 926. Accordingly, we overrule Deese's final issue.

## V. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P 47.2(b).

Delivered and filed on the
28th day of March, 2024.